UNITED STATES of America,
Plaintiff–Appellee,

v.

George BROWN, Jeff Anderson,
Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Willie BRADSHAW, a/k/a Brad, Hamin Abdul Muhammad, a/k/a Anthony Keith Edwards, George Brown, Jeff Anderson, Defendants–Appellants.

Nos. 87–3507, 87–3684.

United States Court of Appeals,
Eleventh Circuit.

May 9, 1989.

Rosemary T. Cakmis, Asst. Federal Public Defender, Jacksonville, Fla., for Brown.

Kevin Sanders, Jacksonville, Fla., for Anderson.

M. Alan Ceballos, Asst. U.S. Atty., Jacksonville, Fla., for U.S.

Stuart R. Mishkin, Miami, Fla., for Bradshaw.

Neal L. Betancourt, Jacksonville, Fla., for Muhammad.

Rosemary T. Cakmis, Asst. Federal Public Defender, Jacksonville, Fla., for Brown.

Kevin S. Sanders, Jacksonville, Fla., for Anderson.

## PETITION FOR REHEARING

Before ANDERSON and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

The opinion and judgment of this Court, dated January 11, 1989, 862 F.2d 1482, is now withdrawn on the motion for rehearing filed by the United States and the fol-

lowing opinion and judgment are entered instead.

These are appeals by four of 18 individuals who were indicted for a number of illegal drug activities on May 6, 1987 in the Southern District of Florida. The indictment contained 70 counts. The other indicted persons either pled guilty or were fugitives at the time of the trial.

## I. STATEMENT OF THE CASE

As indicated in the indictments, the grand jury's finding of a true bill against the four appellants was based largely on telephone interceptions of telephones listed under the names of the several defendants.

Based on a transcript of the proceedings before the grand jury, the defendants moved for dismissal of the indictment on the ground that the prosecutor abused the grand jury's authority and subverted its proceedings into a *pro forma* adoption of the prosecutor's proffered bill of indictment. The trial court denied this motion.

Thereafter, defendants moved to suppress evidence contained on the tapes which resulted from electronic surveillance which had been authorized by a state court judge based on an application by state authorities.

The trial court also denied these motions to suppress.

Following trial, these four appellants were convicted on several counts each.

## II. ISSUES

We consider that only the following issues on appeal merit discussion:

1. Did the court err in declining to dismiss the indictment on the ground that prosecutorial abuse of the grand jury subverted the function of the grand jury and rendered it a prosecutorial rubber stamp?

2. Did the court err in failing to suppress the fruits of the electronic surveillance?

3. Was the evidence sufficient to establish the guilt of the four appellants beyond a reasonable doubt?

4. Did the trial court err in qualifying and admitting the testimony of a government expert witness as to drug code words and jargon?

5. Did the trial court abuse its discretion by the manner in which it permitted the transcripts of electronic surveillance to be viewed by the jury?

## III. DISCUSSION

### A. *Dismissal of the Indictment*

■ It is plain from a study of the transcript of the grand jury proceedings that a large part of the evidence given to the grand jury was in response to leading questions, which were answered by the sole witness who had conducted the electronics surveillance by his simple answer of "yes" or "that's right" or "that's correct." While not contending that it is improper for the government counsel to ask leading questions of the witnesses before the grand jury, defendants contend that the extent to which these indictments were based upon this type of questioning amounted to conduct so outrageous that it was fundamentally unfair and shocking to the universal sense of justice.

They also contend that substantially all of the agent's testimony before the grand jury was hearsay, thus compounding the alleged "prosecutorial misconduct."

This Court has stated:

To amount to a constitutional violation the law enforcement techniques must be so outrageous that they are fundamentally unfair and " 'shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *U.S. v. Russell*, 411 U.S. [423] at 432, 93 S.Ct. [1637] at 1643, [36 L.Ed.2d 366 (1973)] (*quoting Kinsella v. U.S. ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960)).

*United States v. Mulherin*, 710 F.2d 731, 735 (11th Cir.1983).

We recognize and understand the trial court's disapproval of the manner in which this case was presented to the grand jury, the court, in fact, likening the procedure to

a "rubber stamp" by the grand jury. However, we are bound by the Supreme Court's decisions dealing with the extreme autonomy enjoyed by a grand jury as stated in *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). There, the Court stated: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more." 350 U.S. at 363, 76 S.Ct. at 409 (footnote omitted).

The Court also declined to exercise its power to supervise the administration of justice in federal courts by establishing a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate and competent evidence. The Court stated:

No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but would add nothing to the assurance of a fair trial.

350 U.S. at 364, 76 S.Ct. at 409.

We should note here that defendants have not challenged the indictment as not being "valid on its face."

However questionable the practice may have been in presenting the case to the grand jury, it must be remembered that a duly-sworn witness actually testified to the factual correctness of all the questions asked him by the prosecutor.

We therefore conclude that the trial court was not in error in overruling the motion to dismiss the indictment.

B. *Suppression of the Tapes*

■ In their motion to suppress the intercepted tapes of telephone conversations on instruments registered to the several appellants, appellants contended that the applications for the right to conduct the intercept had been granted by a state court judge upon an application that had failed to comply fully with the state statute dealing with such intercepts. The federal statute, 18 U.S.C. § 2518(1)(a-f), and the Florida state statute, 934.09(1)(a-f), both required an application to include the following:

... (e) A full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application *and the action taken by the judge on each such application;* ....

(Emphasis added).

In their brief to this Court, appellants state:

In the instant case the application and/or the extensions briefly mention that previous applications have been made to judges of the Fourth and Fifteenth Judicial Circuits of the State of Florida, and to the federal district of South Carolina. There is no full and complete statement of the facts regarding those previous applications, *nor is mention made of the action taken by the judges on these previous applications.* (Emphasis added).

Bradshaw Brief, p. 8.

The brief of the United States, replying to this contention by the appellants, makes the following statement:

The defendants contend that § 934.09e was not honored in the applications in the instant case. That statute is virtually identical to 18 U.S.C. § 2518(1)(e). The initial application contained the following statement:

Your affiant has knowledge of a previous application made to a judge of the Fifteenth Judicial Circuit to intercept or for approval of interceptions of wire

communications which may involve some of the same persons, facilities, or places specified in this application. (R2–334; 45).

The application for the first extension of time within which to intercept oral communications contained the following statement:

> Your affiant has knowledge of previous applications made to judges of the Fourth and Fifteenth Judicial Circuit to intercept or for approval of interceptions of wire communications which may involve some of the same persons, facilities, or places specified in this application. (R-*Id.*).

The application for the second extension of time within which to intercept wire communications contained the following statement:

> Your affiant has knowledge of previous applications made to judges of the Fourth and Fifteenth Judicial Circuit of Florida and the Federal District of South Carolina to intercept or for approval of interceptions of wire communications which may involve some of the same persons, facilities, or places specified in this application. (R-*Id.*).

Defendants contend that these three statements, identifying the location and jurisdiction of other wire communication orders, were insufficient.

United States Brief, pp. 23–24.

Thus, it will be seen that the government did not challenge the correctness of the appellants' statement that none of the three applications made any mention of the action taken by the judge on the previous applications. However, in their petition for rehearing, the government undertakes to establish that this statement by the appel-

lants in their original briefs, was totally without foundation. Upon the government's belatedly calling attention to the actual applications which were filed to obtain the wire intercept orders, it is clear that the affiant in each case expressly and explicitly states when and where the applications had been filed and states precisely what action had been taken on the applications by the appropriate judge.

Accepting as true the agreed statement in the appellants' and government's briefs that the applications failed to make a statement as to the actions taken by the judges on the previous applications, this Court then, under the decision of this Court in *U.S. v. Domme*, 753 F.2d 950 (11th Cir. 1985), sought to determine whether the state or federal rule was "more rigorous" in the enforcement of the requirements of the statute. We concluded that in this case, since the application was made by a state agent to a state judge, the Florida rule under 934.09(1)(a-f) was to be applied. There is no doubt that the Florida courts had construed the statute to require a literal following of the requirements of the statute. *See Bagley v. State*, 397 So.2d 1036 (Fla.D.C.App.1981), and *State v. Aurilio*, 366 So.2d 71 (Fla.D.C.App.1978). We thus held that the order to intercept was invalid and that the fruits of the interception must be suppressed.

Being now fully apprised of the true facts, however, it is evident that the basis for our opinion was without foundation. We have carefully considered the record as a whole and find that all of the requirements of the Florida statute, as set out above, were fully complied with in the applications upon which the intercepts were ordered.[1]

---

1. Although still not called to our attention by either party, we note that the Florida state constitution was amended in 1982 in order to require that the personal rights of the individual in the State of Florida under the state's version of the Fourth Amendment to the United States Constitution should apply equally against "the unreasonable interception of private communications" by stating:

> No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be

searched, the person or persons, thing or things to be ceased, *the communication to be intercepted* and the nature of evidence to be obtained. This right shall be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the Fourth Amend-

We conclude, based upon the correct reading of the record, that the trial court properly declined to suppress the intercepts.

### C. *Sufficiency of the Evidence*

■ The convictions of the appellants in this case were based largely upon the testimony of cooperating defendants who had pled guilty but they were also largely dependent upon taped conversations that made reference to each of the appellants. Since we have concluded that the contents of the tapes were properly admitted in evidence and were relied on by the United States to sustain the convictions, it is clear that the government met the standard of proof to sustain the convictions of appellants Brown, Bradshaw, and Anderson. That standard is whether the evidence, when considered in the light most favorable to the government, proved the defendants' guilt beyond a reasonable doubt. *United States v. Sanchez,* 722 F.2d 1501 (11th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984).

■ Under this standard, however, we find that the evidence was insufficient to prove Muhammad guilty of the alleged conspiracy beyond a reasonable doubt. Muhammad was found guilty of four counts of the indictment, Counts 1, 16, 20 and 24. Count 1 charged a conspiracy with other defendants to distribute cocaine or to possess cocaine with the intent to distribute it. This Court has repeatedly stated the kind of knowledge and participation the Government must prove to hold an individual to be a conspirator in a conspiracy case:

> It is not necessary that the government prove the defendant knew every essential detail or participated in every stage of the conspiracy. The government need only show that the appellant knew of the conspiratorial goal and that

he voluntarily participated in helping to accomplish the goal. *United States v. Gianni,* 678 F.2d 956 (11th Cir.1982); *United States v. Watson,* 669 F.2d 1374 (11th Cir.1982); *United States v. Davis,* 666 F.2d 195 (5th Cir. Unit B 1982).

*United States v. Lee,* 695 F.2d 515 (11th Cir.1983), *cert. denied,* 464 U.S. 839, 104 S.Ct. 130, 78 L.Ed.2d 125 (1983).

The conspiracy alleged here was not a conspiracy to *possess* cocaine; it was rather a conspiracy to *distribute* cocaine or to possess *with intent to distribute.*

Here, the only oral testimony that linked Muhammad in any way with cocaine was given by George Walker, a co-indictee who pled guilty under a plea bargain. Walker was identified by the United States in its brief as "the lead defendant in the instant case." His testimony and that of other witnesses made it amply clear that he was the "lead" actor in the conspiracy.

Walker's testimony clearly proved that he on several occasions furnished Muhammad with small amounts of cocaine, either from four to six grams or from six to eight grams. Assuming that on each occasion, Walker furnished him with eight grams (between one-quarter and one-third of an ounce), the question then becomes whether these amounts delivered to Muhammad, known to Walker as a cocaine user, were sufficient to permit the jury to infer his participation in a conspiracy to distribute or to possess with intent to distribute to someone else.

Walker testified he knew of no sale by Muhammad; he knew of no drug-related errands performed by Muhammad; he knew of no collections made by Muhammad for cocaine from anyone else. He testified to the effect that Muhammad was indebted to him at one time in the sum of $1,600, but then stated that this amount resulted from several transactions.[2] Walker also testi-

---

ment to the United States Constitution. (Emphasis added).
Fla. Const., Art. I, § 12.
Since we conclude that the requirements of the Florida statute have been fully complied with in this case, we need not determine whether this Constitutional Amendment eliminates any difference between the treatment accorded

a Florida citizen whose telephone has been tapped under the Florida law and a Florida citizen whose telephone has been tapped by an order of a federal judge.

2. This testimony was as follows:
Q: Sixteen hundred dollars you mentioned, what was that for?

fied that the most cocaine he had ever given Muhammad was "maybe about six, from six to eight grams."

The intercepted tapes, as interpreted by the government's expert witness, proved no more than that Muhammad had received small amounts of cocaine, never in excess of six to eight grams, from either Walker or co-defendant Brown and that payments in the amount of $600 or $700 were made either to Walker or Brown by Muhammad and that at one time Walker was demanding payment of $1,600 from Muhammad.[3]

Thus, the only evidence from which a jury could find that Muhammad was a member of the existing conspiracy, was the evidence of these several deliveries to him of the amounts of cocaine designated above, referred to in the government's brief as "the ounce quantities he obtained." There is no proof in the record that at any time, Muhammad ever received as much as a single ounce of cocaine from either Walker or Brown. As indicated above, eight grams of cocaine represent between one-fourth and one-third of an ounce.

To begin with, we must note that the mere fact of the purchase by a consumer of an amount of an illegal substance does not make of the seller and buyer conspirators under the federal statutes:

> It is well settled that the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement. *United States v. Braico,* 422 F.2d 543 (7th. Cir. 1970); *United States v. Watson,* 594 F.2d 1330–1370 (10th Cir.1979); and *United States v. Torres,* 503 F.2d 1120, 1123 (2d Cir.1974).

*United States v. Bascaro,* 742 F.2d 1335, 1359 (11th Cir.1984).

A:  Money that Hamin owed me, sir.
Q:  For what?
A:  Cocaine.
Q:  And was this something that had built up over some time?
A:  Yes, sir.
Q:  So—well, how much does six grams cost at this time?
A:  It all depend.
Q:  Give me a range, please.

Thus, in order for the jury to find Muhammad guilty under the conspiracy count, it was necessary for the government to prove that there was a conspiracy to either: (a) distribute cocaine, or (b) possess cocaine with intent to distribute it, and that Muhammad "knew of the conspiratorial goal and that he voluntarily participated in helping to accomplish the goal." *United States v. Lee,* 695 F.2d 515 (11th Cir.1983).

Here, absent any proof of actions by Muhammad in furtherance of the conspiracy, which the government proved adequately against the other appellants, other than the sales referred to above, we conclude that there was no basis in the evidence from which a jury could properly infer either a knowledge of the existence of the conspiracy or of Muhammad's intention to become a party to it. *Cf. United States v. Bascaro,* 742 F.2d 1335 (11th Cir.1984).

As to Muhammad's conviction on counts 16, 20, and 24, the lack of sufficient evidence to sustain his conviction on the conspiracy count requires a reversal of his conviction on these counts as well. The indictment (referring to different times) read as follows:

> On or about February 20, 1987 at approximately 8:17 a.m. at Jacksonville in the Middle District of Florida,
>
> George Brown,
>
> Hamin Abdul Muhammad,
> the defendants herein, did knowingly, willfully and intentionally use a communication facility, that is, a telephone to facilitate the conspiracy set forth in count 1, in that George Brown used a telephone at (904) 743–5871 to talk with Hamin Abdul Muhammad at telephone (904) 764–2614 about the payment of money by Hamin Abdul Muhammad to George Brown and the delivery of co-

A:  Say, six ounces—I mean six grams, might cost four hundred twenty dollars.
Q:  So the sixteen hundred didn't represent one delivery or transaction, it was something that had built up over some time?
A:  Yes, sir.

**3.** As to this $1,600 amount, as stated above, Walker testified personally that it represented an accumulation of several items of cocaine supplied by him to Muhammad.

caine by Brown to Hamin Abdul Muhammad in violation of Title 21 U.S.Code Section 843(b).

There was no oral testimony or taped conversation between these parties from which the jury could infer that Muhammad either intentionally, or even knowingly, attempted to *facilitate* the Walker–Brown conspiracy. As we have already stated, the only evidence linking these parties together was the purchase on several occasions of small amounts of cocaine by Muhammad from Walker and Brown and the payments he made for these purchases. As we have previously held, this is insufficient to warrant an inference by a jury that Muhammad willingly and intentionally entered into the conspiracy. It is also insufficient evidence from which a jury could infer an intent by Muhammad to "facilitate" the same conspiracy.

D.  *The Expert Testimony*

■  The United States originally filed a memorandum in support of its proposed use of law enforcement officers as expert witnesses to interpret drug codes and jargon. The United States introduced special agent Charles Queener with the Federal Bureau of Investigation who undertook to describe his experience as an investigator in this type of case. As a part of his statement as to his expertise, agent Queener spoke of his activity in connection with another case in which he had testified as to the meaning of certain language used in suspected drug deals and the fact that defendant had been convicted. Presumably, this testimony was intended by Queener to demonstrate the accuracy of his interpretations of drug code words. Appellants complain of the testimony about this unconnected case.

The appellants also complain that the intercepts did not contain a single word about cocaine. Instead, the intercepts contained references to "paper", "candy," "dresses", certain numbers and "the full house" and certain real estate terms. Codefendant Walker stated, and agent Queener gave his opinion that, these terms related to the sales of cocaine.

This Court has held that a "trial judge has broad discretion in admitting or excluding expert testimony, and his action is to be sustained [on appeal] unless [it is] manifestly erroneous, *see United States v. Costa,* 691 F.2d 1358, 1361 (11th Cir.1982), and *United States v. Gold,* 743 F.2d 800, 817 (11th Cir.1984)." Applying this standard, we cannot find that the trial court abused its discretion in permitting this testimony.

E.  *Use of Transcripts of the Tapes*

■  Appellants complain that the trial court erred in permitting government transcripts of the tape recordings to be viewed by the jury, both while the tapes were being played and while the jury was deliberating on the case in the jury room.

The propriety of the government's use of transcripts of taped recordings as an "aid" to the jury has been clearly established in *United States v. Onori,* 535 F.2d 938 (5th Cir.1976). Furthermore, the use of transcripts is not restricted to the time of presenting the tapes to the jury. In *United States v. Williford,* 764 F.2d 1493 (11th Cir.1985), this Court held that absent a showing that the transcripts are inaccurate or that specific prejudice occurred, there is no error in allowing transcripts to go to the jury room. *See also United States v. Costa,* 691 F.2d 1358 (11th Cir.1982).

Appellants contend that the trial court erred in not granting a mistrial when defense counsel all stated to the court that they had observed some of the jurors reading the transcripts before the tape was played. The trial court denied the motion for mistrial, without expressing any view as to the correctness of the observation by defense counsel. However, there is no indication that such a reading of the transcripts as was being done by the jury during a hiatus between the playing of tapes violated the court's instruction that the transcripts should be used only as an "aid" in understanding the tapes.

We conclude, therefore, that the trial court did not err in denying the motion for mistrial or in permitting the transcripts to be permitted in the jury room.

## IV. CONCLUSION

The conviction of Hamin Muhammad is therefore REVERSED and the convictions and sentences of the remaining appellants are AFFIRMED.