[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10138
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00030-CR-OC-10-GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES L. JOHNSON,
GERALD D. DANDRIDGE, JR.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(June 16, 2008)**

Before CARNES, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

This appeal involves two co-defendants, Gerald Dandridge and James

Larceilus Johnson, who were tried and convicted together. Dandridge appeals

from his convictions for conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846; passing counterfeit Federal Reserve notes, in violation of 18 U.S.C. § 472; possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c); and possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). On appeal, Dandridge contends that the district court erred in: (1) denying his motion to suppress evidence obtained from a wiretap; (2) denying his motion to suppress evidence obtained pursuant to a search of his residence; and (3) permitting Dandridge's counsel to withdraw from representation prior to trial.

Johnson, in turn, appeals from his 517-month total sentence for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; passing counterfeit Federal Reserve notes, in violation of 18 U.S.C. § 472; and possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). Johnson argues that the district court erred in: (1) imposing a 30-year mandatory minimum sentence, pursuant to § 924(c)(1)(B)(ii), in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; (2) imposing an unreasonable sentence; and (3) imposing an aggravating-role sentencing enhancement.

2

After thorough review of the record and the arguments on appeal, we affirm.

## I. Dandridge's Appeal

We review the district court's factual findings on a motion to suppress for clear error, and its application of law to those facts de novo. United States v. Garcia-Jaimes, 484 F.3d 1311, 1320 (11th Cir. 2007), pet. for cert. filed, No. 06-11863 (U.S. June 11, 2007). We review de novo whether an affidavit established probable cause for a search warrant, "tak[ing] care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000). We review the trial court's refusal to hear the defendant through his chosen counsel for abuse of discretion. See United States v. Dinitz, 538 F.2d 1214, 1219-1220 (5th Cir. 1976).[1]

First, we reject Dandridge's claim that evidence obtained from a court-authorized wiretap of his electronic communications should have been suppressed. In making this determination, "[a]s a general rule, federal law governs the admissibility of tape recordings in federal criminal cases, and complaints that the evidence was obtained in violation of state law are of no effect." United States v. Glinton, 154 F.3d 1245, 1252 (11th Cir. 1998) (internal quotations omitted).

---

[1] We have adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

However, "federal courts must defer to state law on the question of the validity of wiretap orders obtained by state law enforcement officers in state courts." Id. at 1252-53 (internal quotations omitted). Because the wiretap application was made by the State Attorney and approved by a Florida circuit court judge, Florida state law governs the admissibility of the wiretap evidence in this case.

Florida law requires that an application for an order authorizing or approving the interception of a wire, oral, or electronic communication include: "[a] full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval for interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities, or places specified in the application, and the action taken by the judge on each such application." Fla. Stat. § 934.09(1)(e). We have held that the requirements of § 934.09 are met where the affiant "expressly and explicitly states when and where the applications had been filed and states precisely what action had been taken on the applications by the appropriate judge." United States v. Brown, 872 F.2d 385, 389 (11th Cir. 1989). Because the instant affidavit stated when and where the prior application was filed, and that an order was entered by the judge, it was sufficient to comply with § 934.09(1)(e).

4

Florida law also requires an application for an order authorizing the interception of wire, oral, or electronic communications to make a showing of necessity by including "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Fla. Stat. § 934.09(1)(c); see Shaktman v. State, 529 So.2d 711, 722 (Fla. App. 1988). The law enforcement agency need not show that it exhausted all other possible investigative techniques before seeking wiretap authorization, "[n]or must every other conceivable method of investigation be unsuccessfully attempted before electronic surveillance will be authorized." Shaktman, 529 So.2d at 722. Rather, the necessity requirement is satisfied "if wiretapping appears to be the most reasonable investigative technique under the circumstances to secure other and conclusive evidence of criminal involvement[.]" Covello v. State, 462 So.2d 1206, 1207 (Fla. App. 1985).

Here, the affidavit contained a full and detailed statement of investigative procedures that had been tried and why they were ineffective, and a statement of the impracticality or futility of other investigative methods, including interviewing members of the organization, using undercover agents, and/or attempting to develop new confidential informants. Because these statements constituted a sufficient factual predicate on which the magistrate judge properly could have

concluded that normal investigative procedures were not reasonably likely to succeed, the affidavit satisfied the necessity requirement of § 934.09(1)(c).

Florida law further requires that an order authorizing the interception of any wire or oral communication specify the type of communication sought to be intercepted and a statement of the particular offense to which it relates. Fla. Stat. § 934.09(4)(c). The authorization of wiretaps is limited to investigations of certain offenses, including "any violation of chapter 893 [the Florida Comprehensive Drug Prevention and Control Act]. . . any violation of chapter 896 [the Florida Money Laundering Act]. . . or any conspiracy or solicitation to commit any violation of the laws of this state relating to the crimes specifically enumerated in this paragraph." Fla. Stat. § 934.07(1)(a). The order at issue merely authorized interception of communications concerning conspiracies to commit violations of Florida's drug and money laundering laws and did not impermissibly authorize the gathering of evidence relating to any and all offenses for which a conspiracy may be entered into. Accordingly, the order satisfied the statutory requirements of particularity and was not overbroad. In short, the district court did not err in denying Dandridge's motion to suppress on these grounds.

We are likewise unpersuaded by Dandridge's contention that evidence seized during the search of his residence should have been suppressed. Pursuant to

6

the Fourth Amendment, a search warrant must describe with particularity the place to be searched, and the persons or things to be seized, and therefore, a warrant that does not sufficiently particularize the place to be searched is unconstitutionally overbroad. United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000). An erroneous description of the place to be searched, however, does not necessarily render a warrant invalid. United States v. Weinstein, 762 F.2d 1522, 1532 (11th Cir. 1985). Rather, "[t]he [F]ourth [A]mendment requires merely that the search warrant describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended." Id. (internal quotation omitted).

The Fourth Amendment also requires that police officers executing a search warrant must knock on the door and announce their identity and purpose before forcibly entering the dwelling. United States v. Segura-Baltazar, 448 F.3d 1281, 1289 (11th Cir. 2006). This requirement has been codified at 18 U.S.C. § 3109, which provides that, when executing a search warrant, "[t]he officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein . . . if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant." 18 U.S.C. § 3109. We have held that, where a door is not

7

fully opened by an occupant, "the force used by the agents to gain admittance invoke[s] [section] 3109." United States v. Tolliver, 665 F.2d 1005, 1008 (11th Cir. 1982). Failure to comply with the knock-and-announce rule is excused, however, where "police . . . have a reasonable suspicion that knocking and announcing their presence . . . would be dangerous or futile, or. . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Segura-Baltazar, 448 F.3d at 1289 (internal quotations omitted).

Here, the warrant was supported by probable cause derived from the wiretap, and described Dandridge's residence with particularity, because even if it failed to describe the guesthouse, the warrant authorized officers to search "all outbuildings and vehicles located on the curtilage," which necessarily included the guesthouse. In addition, the officers complied with the knock-and-announce rule by announcing their identity and purpose, and knocking on the front door, which already was slightly ajar, before entering the residence. In any event, any alleged failure of the agents to wait for a response after they knocked and announced their presence was justified since the officers had reason to believe that the house contained a significant cache of firearms. Accordingly, the district court did not err in denying Dandridge's motion to suppress the fruits of the search.

8

Next, we find no merit to Dandridge's argument that he was entitled to, but never received, notice of his counsel's withdrawal and the opportunity to have the district court determine at an evidentiary hearing whether his chosen counsel should be disqualified based on an alleged conflict of interest. We have held that an attorney's actual or potential conflict of interest overcomes the presumption in favor of a defendant's counsel of choice and warrants disqualification. United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994); see United States v. Almeida, 341 F.3d 1318, 1323 (11th Cir. 2003) (holding that "the Sixth Amendment right to have the effective assistance of counsel encompasses the right to have counsel untainted by conflicts of interest"). Although a client may knowingly, intelligently, and voluntarily waive his right to conflict-free representation, the court may refuse to accept the waiver where necessary to ensure the adequacy of the defendant's representation, to protect the integrity of the court, and to preserve the trial judge's interest to be free from future attacks over the adequacy of the waiver and the fairness of the trial. Ross, 33 F.3d at 1524 (citation omitted).

Because the record reflects that the district court was confronted with information that Dandridge's counsel was involved in Dandridge's illegal activities, and also represented another defendant, whose interests were at least potentially adverse to Dandridge's, counsel's representation of Dandridge gave rise

9

to at least two potential conflicts of interest. The fact that Dandridge was willing to, or did, waive these conflicts was immaterial, in light of the district court's greater interest in protecting the integrity of court and ensuring the adequacy of representation. See id.

Moreover, Dandridge's counsel voluntarily withdrew from representation after informing the court that he had discussed the matter with Dandridge and determined that withdrawal was in Dandridge's best interest. In such circumstances, where the conflict of interest issue was mooted by the counsel's voluntary withdrawal, Dandridge was not entitled to an evidentiary hearing to examine whether a conflict of interest existed. See Byrne v. Nezhat, 261 F.3d 1075, 1091 (11th Cir. 2001) (noting that defendants' motion to revoke opposing counsel's pro hac vice status was mooted by opposing counsel's withdrawal from the case). As for Dandridge's argument that he was entitled to prior notice of his counsel's withdrawal under Local Rule 2.03(b), we will not address this argument since Dandridge did not assert it in his initial brief. See United States v. Evans, 473 F.3d 1115, 1120 (11th Cir. 2006), cert. denied, 128 S.Ct. 44 (2007).

Finally, the record reflects that, upon granting the motion by Dandridge's counsel, the district court took measures to ensure that Dandridge had ample time to secure alternate private counsel, and, if he was unable to secure alternate private

10

counsel, qualified counsel would be appointed to represent him. In fact, the court subsequently determined that Dandridge was entitled to the appointment of counsel under the Criminal Justice Act, and appointed counsel for Dandridge. Several months later, after Dandridge expressed dissatisfaction with the appointed counsel, Dandridge was appointed new counsel again. That counsel represented Dandridge through the trial. For these reasons, it was not an abuse of discretion for the court to grant the motion to withdraw filed by Dandridge's original counsel. See Dinitz, 538 F.2d at 1222 (holding that there was no abuse of discretion where the defendant had ample opportunity to secure another attorney).

## II. Johnson's Appeal

We review constitutional challenges to a sentence de novo. United States v. Campbell, 491 F.3d 1306, 1314 (11th Cir. 2007). We review the ultimate sentence imposed by a district court for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)). "[A] district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

There is no merit to Johnson's Eighth Amendment argument. "[I]n non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle." United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005) (internal quotations omitted). In assessing an alleged Eighth Amendment violation, we must determine if the sentence imposed was grossly disproportionate to the offense committed and, if it was, we "must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions." Id. at 1324 (internal quotations omitted). Because we accord substantial deference to Congress, which has "broad authority to determine the types and limits of punishments for crimes, . . . successful challenges to the proportionality of sentences are exceedingly rare." Id. at 1323 (internal quotations, alteration and emphasis omitted).

We have held that "a sentence which is not otherwise cruel and unusual does not become so simply because it is mandatory." Id. at 1324 (internal quotations and alteration omitted). We consistently have upheld the imposition of mandatory minimum sentences under a number of statutes. See United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000); United States v. Willis, 956 F.2d 248, 251 (11th Cir. 1992); United States v. Jones, 933 F.2d 1541, 1548 (11th Cir. 1991).

12

Given the serious and dangerous nature of possessing a machine gun in furtherance of drug-trafficking activities, the 360-month statutory minimum sentence that Johnson received under § 924(c) was not grossly disproportionate to the offense. Johnson's sentence therefore did not violate the Eighth Amendment.

We further conclude that the district court's imposition of Johnson's mandatory minimum sentence was not unreasonable. While "the district court must consider [the 18 U.S.C. § 3553(a)] factors to determine a reasonable sentence," it lacks discretion to grant relief from a mandatory minimum sentence. See United States v. Brehm, 442 F.3d 1291, 1299-1300 (11th Cir. 2006); United States v. Simpson, 228 F.3d 1294, 1303 (11th Cir. 2000) ("[t]he district court ha[s] no discretion to depart downward from the relevant statutory mandatory minimum sentences"). Because § 924(c)(1)(B)(ii) requires that a defendant who is convicted of possessing a machine gun in furtherance of a drug-trafficking crime be sentenced to a term of imprisonment of not less than 30 years, the district court had no discretion to impose a lesser sentence.

Lastly, the district court did not clearly err in applying an aggravating-role enhancement under U.S.S.G. § 3B1.1. This Guideline provides for a three-level increase "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was

13

otherwise extensive." U.S.S.G. § 3B1.1(b). In order to qualify for a supervisory-role enhancement under this section, the defendant need only manage or supervise one other participant. U.S.S.G. § 3B1.1 cmt. n.2. We have held that "the management enhancement is appropriate for a defendant who arranges drug transactions, negotiates sales with others, and hires others to work for the conspiracy." United States v. Matthews, 168 F.3d 1234, 1249 (11th Cir. 1999); see United States v. Howard, 923 F.2d 1500, 1503 (11th Cir. 1991) (upholding a three-level increase under § 3B1.1(b) where the defendant served as a source of credit by fronting cocaine to a co-conspirator, and therefore maintained at least constructive control over the co-conspirator).

Although Johnson argues that he was merely a "mule" for Dandridge, the record contains testimony of individuals attesting that they sold cocaine for, and reported directly to, Johnson; that Johnson eventually took over Dandridge's cocaine distribution business; and that Johnson was Dandridge's "right hand man." Moreover, the PSI determined that Johnson was the "manager" of the drug organization. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (facts contained in the PSI to which a defendant fails to object are deemed to have been admitted). Because the evidence demonstrated that Johnson asserted control or influence over at least one other person during the course of the conspiracy, the

14

district court did not clearly err in finding that he was subject to a three-level aggravating-role enhancement under § 3B1.1.

Accordingly, we affirm Dandridge's conviction and Johnson's sentence.

**AFFIRMED.**