[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15455
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00561-JDW-MAP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

ASIEBA IMADJAM THOMAS,
a.k.a. Asieba Imadfami Thomas,
a.k.a. Asieba Imadiami Thomas,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 3, 2014)

Before HULL, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Asieba Imadjam Thomas appeals his conviction and sentence for use of an interstate commerce facility with intent to commit murder-for-hire,  18 U.S.C. § 1958 (Count 1); possession and attempted possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. §  841(a)(1), (b)(1)(B) and 18 U.S.C. § 3147 (Count 2); possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(e)(1) (Count 3); and carrying or possessing a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A) (Count 4).  On appeal, Thomas argues the district court erred by (1) admitting and publishing to the jury transcripts of recordings between Thomas and a cooperating witness; (2) denying his motion for judgment of acquittal on all four counts, based on the government's failure to establish a prima facie case; and (3) imposing an imprisonment sentence that was both procedurally and substantively unreasonable. We affirm.

## I.

At trial, Tarrantzon Barr testified he previously had been incarcerated with Thomas.  While they were in jail, Thomas approached Barr and stated a willingness to murder Barr's codefendant, whom Thomas had learned was cooperating against Barr.  Later, after both men were out of jail on bond, Barr decided to become a cooperating witness against Thomas for the government to receive a reduced sentence in his case.  Before Barr contacted the government,

however, he purchased a portable recording device, contacted Thomas on July 25, 2011, to discuss the murder-for-hire scheme, and recorded their conversation.

Barr testified that, during the July 25, 2011, conversation, Thomas stated he would murder Barr's codefendant using a syringe, but he needed a firearm to intimidate and control the codefendant.  Thomas also agreed to accept a combination of cash and cocaine, which together would equal $40,000, as payment for the murder.  Barr subsequently gave the recording of that conversation to the government, which directed Barr to collect additional evidence against Thomas in the form of audio and video recordings.  Barr complied.

At trial, the government introduced the audio and video recordings of Thomas and Barr's conversations, as well as transcripts of those recordings.  The district court admitted the recordings into evidence and admitted the transcripts as aids to help the jury.  Thomas did not object to the admission of either the recordings or the transcripts.  The recordings were difficult to understand, because Thomas and Barr used street slang throughout their conversations, making the recordings that hard to decipher.  Much of Barr's testimony involved interpreting the recordings and explaining the meaning of slang terms.

Barr also testified that, in a subsequent conversation with Thomas, Barr told Thomas he would front the cocaine to Thomas and provide him with a small handgun to use in the murder-for-hire scheme.  On September 7, 2011, Barr

3

informed Thomas they could pick up the drugs and gun that day. Barr picked up Thomas in a rented automobile, which was fitted with a video recording device, and drove to a nearby mall where law enforcement officers were waiting to conduct the takedown operation. Barr exited the vehicle and retrieved a black bag, containing a firearm and nearly a kilogram of cocaine, from an undercover agent. When he returned to the car, he handed the bag to Thomas. Thomas looked in the bag and stated: "I ain't want that." Thomas then put the bag between his feet on the floorboard of the vehicle and stated: "Let's peel from up here." Law enforcement agents then approached and took Thomas into custody.

Thomas testified in his own defense that he never agreed to murder Barr's codefendant but wanted drugs and was "BSing" and "bamboozling" Barr to convince Barr to front him the drugs. Once Thomas received the drugs, he planned to disappear and never see Barr again. Thomas further testified he wanted only a compressed form of marijuana, not cocaine. He contended his statement, "I ain't want that," supported his assertions that he never agreed to commit murder and did not want cocaine. At the close of evidence, Thomas raised an entrapment defense.

The jury convicted Thomas of all four counts of the indictment. At sentencing, the district court applied a two-level sentencing enhancement for obstruction of justice in calculating Thomas's advisory Sentencing Guidelines range and found Thomas had perjured himself at trial when he testified he had not

4

agreed to murder Barr's codefendant, and he wanted marijuana, not cocaine.  The court sentenced Thomas to a total of 360 months of imprisonment and varied down from the applicable Sentencing Guidelines range, which was a minimum sentence of 420 months.

## II.

Thomas argues the district court erred by admitting and publishing to the jury the transcripts of the recorded conversations between Barr and him.  He asserts the recorded conversations were difficult to understand and were coded in street slang, and he was never afforded an opportunity to present his own transcripts.  He also argues the jury placed prejudicial reliance on the transcripts, evidenced by the jury's request for the transcripts during deliberation.

We generally review a district court's admission of evidence for abuse of discretion.  *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007).  Where a defendant "fails to preserve an evidentiary ruling by contemporaneously objecting," we review only for plain error.  *Id.*  Under plain error review, we cannot correct an error at trial unless: (1) there was error; (2) which was plain; (3) affected the defendant's substantial rights; and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  *Id.* at 1276.

"The propriety of the government's use of transcripts of taped recordings as an 'aid' to the jury has been clearly established" in this court.  *United States v.*

5

*Brown*, 872 F.2d 385, 392 (11th Cir. 1989) (citing *United States v. Onori*, 535 F.2d 938, 946-49 (5th Cir. 1976)).  The jury must always reconcile any discrepancies in a transcript against the recording; a district court "need not find that the transcript is perfectly accurate prior to its admission, and a defendant's remedy for alleged inaccuracies is to offer his own transcript with proof as to why it is the better one." *United States v. Hogan*, 986 F.2d 1364, 1376 (11th Cir. 1993).  Furthermore, the use of transcripts is not restricted to the time of presenting the recordings to the jury.  *Brown*, 872 F.2d at 392.  Absent a showing the transcripts are inaccurate or specific prejudice occurred, there is no error in allowing transcripts to go to the jury room.  *Id.*

The district court did not plainly err by admitting and publishing to the jury the transcripts of the recorded conversations between Thomas and Barr.  The court was allowed to admit the transcripts to aid the jury, and the court was not required to find the transcripts were accurate before admitting them.  *Hogan*, 986 F.2d at 1376; *Brown*, 872 F.2d at 392.  Thomas did not object to the transcripts when they were first introduced, nor did he provide his own transcripts for the jury's consideration.  Moreover, the district court instructed the jury not to consider the transcripts as evidence but to consider the actual recordings.  Although the transcripts were coded in street slang, Barr testified regarding the meaning of the slang terms; Agent Eric Kustra, who was trained in the slang of drug deals,

6

corroborated Barr's testimony on the meaning of those terms.  Although Thomas argues the jury placed prejudicial weight on the transcripts, based on its request for them during deliberation, he has failed to demonstrate how any inaccuracies in the transcripts caused any specific prejudice.  *See Brown*, 872 F.2d at 392.

## III.

Thomas argues the district court erred in denying his motion for judgment of acquittal, because the government failed to prove a prima facie case on all four counts of the indictment.  We review the denial of a motion for judgment of acquittal de novo.  *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005).  When the motion challenges the sufficiency of the evidence, our review also is de novo with all reasonable inferences drawn in the government's favor.  *Id.*

## A.

Thomas argues the government failed to prove he possessed the requisite criminal intent to execute the murder-for-hire scheme.  Although the jury rejected his entrapment defense, he also asserts the evidence was insufficient for a reasonable jury to conclude that he was predisposed to commit murder-for-hire.  Anyone who "travels in or causes another . . . to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed [for payment]" commits murder-for-hire.  18 U.S.C. § 1958(a).  To prevail on a conviction for murder-for-hire, the government must prove the defendant: "(1)

7

used or caused another to use any facility of interstate or foreign commerce; (2) with the intent that a murder be committed; (3) as consideration for a promise or agreement to pay anything of pecuniary value." *United States v. Preacher*, 631 F.3d 1201, 1203 (11th Cir. 2011).

"An entrapment defense consists of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant." *United States v. Haile*, 685 F.3d 1211, 1219 (11th Cir. 2012) (citation and internal quotation marks omitted), *cert. denied*, 133 S. Ct. 1723 (2013). Where the defendant argued, and the jury rejected an entrapment defense, our review "is limited to deciding whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction." *Id.* (citation and internal quotation marks omitted).

The district court did not err in denying Thomas's motion for a judgment of acquittal on the murder-for-hire charge, because sufficient evidence demonstrated Thomas's intent to commit murder-for-hire. Barr testified Thomas approached him with the murder-for-hire scheme, while they were both in jail. In addition, Thomas told Barr he needed a firearm to intimidate the codefendant, but noted he actually would commit the murder using a syringe. Thomas further stated he needed to "go to the country" and "dig," so the codefendant would not "pop up."

The government also presented sufficient evidence to counter Thomas's entrapment defense. *See Haile*, 685 F.3d at 1219. Specifically, Barr testified Thomas approached him about the murder-for-hire scheme, while they were still in jail and before Barr began cooperating with the government. Likewise, Thomas made numerous statements about committing murder on July 25, 2011, before Barr began cooperating with the government, including how much Thomas was going to charge and how he planned to commit the murder.

### B.

Regarding his drug and firearm crimes, Thomas argues the government failed to demonstrate he took possession of the drugs and gun. He contends, after looking into the bag and seeing the drugs and gun, he immediately stated he did not want them and placed the bag on the floor. From those facts, he asserts he did not possess the drugs and gun, either actually or constructively.

To sustain a conviction under 21 U.S.C. § 841(a)(1) for possession with intent to distribute cocaine, the government must prove the defendant "(1) knowingly (2) possessed cocaine (3) with intent to distribute it." *United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir. 2006) (citation and internal quotation marks omitted). To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove (1) the defendant was a convicted felon, (2) the defendant was in knowing possession of a firearm, and (3) the firearm was in or affecting

interstate commerce. *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009). To sustain a conviction under 18 U.S.C. § 924(c), the government must prove the defendant (1) knowingly (2) possessed a firearm (3) during and in relation to a crime of violence or drug trafficking crime. 18 U.S.C. § 924(c)(1)(A); *see also United States v. Woodard*, 531 F.3d 1352, 1362 & n.18 (11th Cir. 2008).

Possession of drugs or a firearm may be either actual or constructive. *Beckles*, 565 F.3d at 841; *Faust*, 456 F.3d at 1345. Constructive possession exists when a defendant exercises "ownership, dominion, or control" over an item or has the power and intent to exercise dominion or control. *Beckles*, 565 F.3d at 841. A defendant's mere presence in the area of an item or awareness of its location, however, is not sufficient to establish possession. *Id.*

The district court did not err in denying Thomas's motion for a judgment of acquittal on his drug and firearm charges, because the evidence demonstrates he constructively possessed the contraband. When Thomas took the bag from Barr, he looked inside it and then placed the bag between his feet on the floor of the car. Thereby, he maintained dominion and control over the drugs and gun. *Beckles*, 565 F.3d at 841; *Faust*, 456 F.3d at 1345. He did not give them back to Barr, nor did he place them out of his reach, such as in the backseat. Moreover, after he placed them at his feet, he instructed Barr to leave, or to "peel from up here." Viewing the evidence in the light most favorable to the government, a reasonable

10

jury could have found that Thomas possessed the drugs and gun, despite Thomas's statement: "I ain't want that."

## C.

Thomas also argues the district court erred in denying his motion for judgment of acquittal on all four counts of the indictment because the government failed to establish the interstate-commerce element. He contends he did not use cellular phones or a vehicle to further the murder-for-hire plot, but the government directed the use of those facilities to entrap him. Thomas also urges reversal on a theory of manufactured jurisdiction. Relying on *United States v. Archer*, 486 F.2d 670, 681-82 (2d Cir. 1973), Thomas argues the government contrived and manufactured jurisdiction in this case, by directing Barr to contact him using cellular phones for the sole purpose of getting into federal court.

For purposes of the murder-for-hire statute, facilities of interstate commerce include cellular phones and automobiles. *See Preacher*, 631 F.3d at 1204. In *Archer*, the Second Circuit dismissed an indictment under the Travel Act, 18 U.S.C. § 1951, and held interstate telephone calls were insufficient to satisfy the "use of a facility in interstate commerce" element, because the "federal officers themselves supplied the interstate element" and had "[m]anufactured jurisdiction." 486 F.2d at 681-82. Although cases may arise where government conduct might be "so outrageous that due process principles would absolutely bar the government

from invoking judicial processes to obtain a conviction," federal courts are "extremely reluctant" to set aside convictions solely on the principle announced in Archer. *United States v. Petit*, 841 F.2d 1546, 1553-54 (11th Cir. 1988).

As an initial matter, Thomas has abandoned his argument that the government failed to prove the interstate-commerce element of the drug and firearm crimes. His brief focuses on the element only as it pertains to the murder-for-hire charge.[1] *See United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004) (recognizing that an appellant abandons a claim not briefed on appeal).

Regarding the murder-for-hire charge, sufficient evidence demonstrated Thomas used or caused another to use any facility of interstate or foreign commerce. *Preacher*, 631 F.3d at 1203. Thomas participated in numerous phone calls with Barr to discuss their plans for the murder; he also rode with Barr to pick up the drugs and gun in a rental car. Moreover, Thomas's reliance on manufactured jurisdiction fails. Even if we were to apply a rule against manufactured jurisdiction, Thomas used a cellular phone to discuss the murder-for-hire plot with Barr before Barr began cooperating with the government.

IV.

---

[1] Of the drug and firearm crimes, only the felon-in-possession charge includes an interstate-commerce element, which requires proving the firearm was in or affected interstate commerce. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. §§ 924(c), 922(g)(1). Thomas has not contested the firearm's origins; a government witness testified the gun was made in Italy.

Thomas argues his 360-month imprisonment sentence is unreasonable. Regarding procedural unreasonableness, he contends the district court erred in applying an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 for his alleged perjury during trial.  Concerning substantive unreasonableness, he argues a lesser sentence would have been adequate to achieve the purposes of sentencing, given the totality of the circumstances and mitigating evidence.

We review the reasonableness of a district court's sentence through a two-step process using the deferential abuse-of-discretion standard of review.  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  First, we determine whether the district court committed any procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Id.*

The 18 U.S.C. § 3553(a) factors include the need (1) to consider the nature and circumstances of the offense and the history and characteristics of the defendant; (2) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) to deter criminal conduct; (4) to protect the public from further crimes of the defendant; and (5) to consider the applicable Sentencing Guidelines range.

13

Once a sentence is determined to be procedurally sound, we examine whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors. *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. We remand for resentencing only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (citation and internal quotation marks omitted). The party challenging the sentence has the burden of establishing the sentence was unreasonable, based on the record and the § 3553(a) factors. *Id.* at 1189. In reviewing a district court's imposition of an obstruction-of-justice sentencing enhancement, we review the court's factual findings for clear error and the application of the factual findings to the Sentencing Guidelines de novo. *United States v. Tampas*, 493 F.3d 1291, 1303 (11th Cir. 2007).

The Sentencing Guidelines provide a two-level enhancement, if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. A defendant obstructs or impedes justice by "committing, suborning, or attempting to suborn perjury." § 3C1.1, cmt. n.4(b). Under this guideline, perjury is defined as "false testimony

14

concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116 (1993). For purposes of § 3C1.1, "material" means "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." § 3C1.1, cmt. n.6. Where a district court must make a particularized assessment of the credibility of a defendant, such as when applying the obstruction-of-justice enhancement for perjury, we accord special deference to the district court's credibility determinations and review for clear error. *United States v. Banks*, 347 F.3d 1266, 1269 (11th Cir. 2003).

Thomas's 360-month imprisonment sentence is procedurally reasonable, because the district court did not err by applying the obstruction enhancement, based on Thomas's perjury at trial. The court applied the enhancement based on two assertions made by Thomas: (1) his assertion that he sought to obtain marijuana, rather than cocaine; and (2) his assertion that he never agreed to murder Barr's codefendant. The court specifically noted Thomas's references to a particular type of marijuana were "bizarre," and the more Thomas talked about the marijuana, the less believable he became. The court further noted the record fully supported its conclusion, and the jury's conclusion, that Thomas lied about "BSing" Barr simply to get the drugs up front. Each of Thomas's assertions

concerned material matters, which, if believed, could have exculpated him of all charges. *See Dunnigan,* 507 U.S. at 94, 113 S.Ct. at 1116; *see also* U.S.S.G. § 3C1.1, cmt. n.6. The court witnessed the demeanor of Thomas and Barr during their respective testimonies; nothing in the record supports overturning the court's credibility determinations. *Banks*, 347 F.3d at 1269.

Thomas's sentence also is substantively reasonable in view of the totality of the circumstances and the § 3553(a) factors. The district court noted Thomas's crimes were "monstrous," and he already had received numerous second chances. Contrary to Thomas's assertion, the district court considered mitigating evidence. The court specifically recognized Thomas had faced tragedies in his life, and his upbringing had been difficult, but noted Thomas had "pave[d] his own road." Moreover, the court addressed Thomas's concerns about his children and noted "[t]his certainly isn't about your children," although observing it was unfortunate that his children may suffer as a result of his conduct. Importantly, the court granted a significant downward variance from the Guidelines range in imposing a 360-month imprisonment sentence.

**AFFIRMED.**