[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-9065

_____

D. C. Docket No. 6:96-CR-2 (WLS)

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
1/21/99
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW ALLISON DEKLE, M.D.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 21, 1999)

Before BIRCH and BARKETT, Circuit Judges, and ALAIMO*, Senior District Judge.

BARKETT, Circuit Judge:

Andrew Allison Dekle, M.D., appeals his conviction and sentence for one count of

conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and 129 counts of

distributing controlled substances in contravention of 21 U.S.C. § 841 arising from writing

_____

* Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia,
sitting by designation.

medically unwarranted prescriptions for Schedule III and IV drugs to a number of women in exchange for sexual favors.[1]  Dekle raises a battery of challenges to his convictions and sentence. Specifically, Dekle argues: (1) that there was insufficient evidence to convict him on all counts charged in the indictment; (2) that certain items (medical records, drugs, and sexually explicit photographs of several women) were seized from his office in violation of the Fourth Amendment to the Constitution and therefore should have been suppressed; (3) that the district court abused its discretion in admitting these sexually explicit photographs in evidence thereby prejudicing him; (4) that the government's reference to his prior indictment further prejudiced him; and (5) that the district court miscalculated his base offense level for sentencing purposes.

The evidence at trial revealed that from approximately 1984 until his arrest in 1994, Dekle issued at least 129 prescriptions for controlled substances without any legitimate medical justification.  The drugs concerned fell into Schedules III and IV of 21 U.S.C. § 812 and may only be lawfully distributed by a licensed physician "in the course of professional practice." United States v. Steele, 147 F.3d 1316, 1317 (11th Cir. 1998) (en banc) (quoting 21 U.S.C. § 802(21)).  Dekle wrote these 129 prescriptions -- which accounted for the 129 illegal distribution counts -- to the four women named in the indictment in exchange for their willingness either to engage in sexual acts with him or to pose naked for photographs which he took.  Dekle admitted at trial that he took nude photographs of another four female patients as well.

We are satisfied that the evidence at trial confirmed that Dekle's issuance of these

---

[1]  Upon his conviction, the United States also sought and obtained forfeiture of Dekle's medical license, his Drug Enforcement Administration registration number, and three parcels of real property held in his name.  These civil penalties have not been appealed.

prescriptions fell outside the bounds of professional medical practice and thus supports his convictions for the illegal distribution of controlled substances. We are also satisfied that under the circumstances presented here the district court did not commit reversible error by denying Dekle's motion to suppress or by overruling his objection to the government's reference to his earlier indictment.

As to Dekle's claim regarding the admission of the photographs, reviewable under an abuse of discretion standard, we are satisfied that, the error, if any, does not warrant reversal. At trial, Dekle admitted to engaging in extensive sexual encounters with patients. His defense was not that sex did not occur or that photographs were not taken, but rather that the prescriptions he wrote for the women in question were medically appropriate. Thus, the jury heard the testimony of both Dekle and various women patients regarding sexual encounters and posing for nude photographs. Although there may not be matching testimony for every act depicted in every photograph, the jury was clearly informed of the nature of the sexual bargain alleged in exchange for the prescription drugs. While it could be argued that not every photograph was admissible on impeachment or other grounds, we cannot say that there was any reasonable likelihood that the admission of the photographs affected Dekle's substantial rights. See United States v. Mendez, 117 F.3d 480, 486 (11th Cir. 1997) ("'[E]videntiary and other non-constitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights' . . . .") (quoting United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990)). Thus, we affirm Dekle's convictions for the 129 counts of illegally distributing controlled substances. We also find no merit in Dekle's argument that the district court improperly calculated his base offense level.

We find, however, that the record does not support Dekle's conviction on one count of conspiracy to distribute controlled substances. In order to establish the existence of a conspiracy under 21 U.S.C. § 846, the government must prove that the defendant entered into an agreement with one or more persons, the object of which agreement was to commit an act made unlawful by the federal narcotics laws. See United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998); United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir. 1990). What distinguishes a conspiracy from its substantive predicate offense is not just the presence of any agreement, but an agreement with the same joint criminal objective – here the joint objective of distributing drugs. This joint objective is missing where the conspiracy is based simply on an agreement between a buyer and a seller for the sale of drugs. Although the parties to the sales agreement may both agree to commit a crime, they do not have the joint criminal objective of distributing drugs. As we have explained,

> the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction . . . . "The relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy to sell, receive, barter or dispose of stolen property although both parties know of the stolen character of the goods. In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective."

United States v. Solomon, 686 F.2d 863, 876 (11th Cir. 1982) (quoting United States v. Mancillas, 580 F.2d 1301, 1307 (7th Cir. 1978) (emphasis in original)).[2] As Judge Posner phrased the same point:

---

[2] See Toler, 144 F.3d at 1433; United States v. Brazel, 102 F.3d 1120, 1136 (11th Cir. 1997); United States v. Wright, 63 F.3d 1067, 1072 (11th Cir. 1995); United States v. Beasley, 2 F.3d 1551, 1560 (11th Cir. 1993); United States v. Brown, 872 F.2d 385, 391 (11th Cir. 1989); United States v. Burroughs, 830 F.2d 1574, 1581 (11th Cir. 1987).

4

When the sale of some commodity, such as illegal drugs, is the substantive crime, the sale agreement itself cannot be the conspiracy, for it has no separate criminal object. What is needed for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the agreement itself.

United States v. Lechuga, 994 F.2d 346, 349 (7th Cir. 1993) (en banc).[3] In the typical drug distribution scenario, involving a large-volume seller, several mid-level distributors, and multiple street-level dealers, to the extent that an agreement can be proven as to each participant, all share the common goal of maximizing the cash returns of the business through the distribution of the drugs. Cf. United States v. Hess, 691 F.2d 984, 988 (11th Cir. 1982) (in conspiracy to hijack cargo trucks, "conspirators shared the common goal of increasing their personal wealth"). It is because of this obvious mutual goal, which exists separate and apart from the individual transactions necessary to effect it, that a conspiratorial agreement may, in proper circumstances, be inferred from a series of drug transactions.[4]

When two parties are charged with agreeing to distribute drugs, evidence that the parties understood their transactions to do no more than support the buyer's personal drug habit is antithetical to a finding of conspiracy. See Lechuga, 994 F.2d at 348-49 (collecting cases holding that purchase for one's own consumption does not evidence a conspiracy to distribute).

---

[3] Although Lechuga produced six separate opinions, seven of the eleven judges agreed with the majority's formulation of the distinction between a conspiratorial and a buyer-seller relationship. See id. at 349 (Posner, J., joined by Bauer, C.J., and Easterbrook, J.); id. at 357 (Rovner, J., concurring); id. at 361-62 (Cudahy, J., joined by Cummings, and Ripple, JJ., concurring in part and dissenting in part). None of the others disavowed this reasoning; they disagreed with the majority on other bases.

[4] Precisely because the drug trade requires a network of buyers and sellers and offers the prospect of money to be made, the government and the courts exercise care to separate evidence from which an agreement to distribute might fairly be inferred from evidence of "mere association" between the parties. See United States v. Hardy, 895 F.2d 1331, 1335 (11th Cir. 1990).

We made this point clearly in United States v. Brown, 872 F.2d 385 (11th Cir. 1989), where we reversed a defendant's conviction for conspiracy to distribute cocaine (and conspiracy to possess with intent to distribute cocaine) despite evidence showing that "on several occasions" the defendant received "small amounts of cocaine, either from four to six grams or from six to eight grams." Id. at 390. The defendant was known to his supplier as a "cocaine user," and there was no evidence that the defendant turned around and sold this cocaine or performed any errands or collections for his supplier or otherwise assisted the ongoing "business." Id. Recognizing that "'the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement'" and that these transactions revealed nothing more than isolated purchases for personal consumption, we held the evidence insufficient to infer the defendant's knowledge of, and intent to join, the existing conspiracy. Id. at 391 (quoting United States v. Bascaro, 742 F.2d 1335, 1359 (11th Cir. 1984)).

The same result obtains where the defendant purchases a small quantity of an illegal drug to share with another person. In United States v. Hardy, 895 F.2d 1331 (11th Cir. 1990), we overturned a defendant's conviction for conspiracy to distribute cocaine where the evidence showed that the defendant "helped [another] purchase an eighth of an ounce of cocaine for their joint personal use." Id. at 1334. We held that the purchase and joint use of a small quantity of the drugs was "an insufficient basis for the inference that [the defendant] intended to distribute cocaine or entered into an agreement to do so." Id. Nor did we find that the defendant's "transfer [on a separate occasion] of a small amount of cocaine to a guest in his home" altered this conclusion. Id. at 1335.

Dekle's relationship with his female patients falls within the boundaries demarcated by

6

these cases. Theirs was a variant of the standard buyer-seller relationship; instead of paying Dekle with money for the illegal narcotics and prescriptions he issued, the patients paid with sexual favors. The evidence shows no more than that they "purchased" the drugs from Dekle for their own personal consumption, and on one or two occasions, shared the drugs with a friend or relative. This evidence falls short of proving a joint criminal objective between any of the patients and Dekle to distribute drugs to third parties. It suffers from the same shortcomings we recognized in Brown and Hardy.

We are not persuaded by the government's argument that the fact that these exchanges were repeated turns a buy-sell agreement into a conspiracy. While we have held "that agreement may be inferred when the evidence shows a continuing relationship that result[ed] in the repeated transfer of illegal drugs to the purchaser," United States v. Johnson, 889 F.2d 1032, 1035-36 (11th Cir. 1989), the cases in which we have done so involved typical drug transactions intended for resale and the generation of proceeds. If the evidence only shows a buy-sell relationship, the fact that the sales are repeated, without more, does not support an inference that the buyer and seller have the same joint criminal objective to distribute drugs.

Nor are we persuaded that the fact that one of Dekle's patients referred another woman to Dekle suffices to support the conviction of conspiracy. The testimony revealed that Dekle had asked Ms. Sheridan if she had "any girlfriends that he might like," and that Sheridan thought of Dekle when her friend Ms. Bishop asked her if she "kn[e]w of anyone that she might be able to get the [money for her] car payment from." R7:119. Sheridan then called Dekle and he told Sheridan to tell Bishop to come to his office that evening. Id. at 127. Sheridan did not tell Bishop that she was getting prescription drugs from Dekle at the time, though Bishop may have

7

been aware of that.  Id. at 128.  That evening, in exchange for allowing him to take nude photographs of her, Dekle wrote Bishop a check for her car payment.  Id.

This evidence is not sufficient to support Dekle's conviction for conspiracy to distribute drugs because it failed to show that Sheridan agreed to help Dekle find women willing to trade sex for drugs as charged in the indictment.  See Toler, 144 F.3d at 1426 ("[T]he government must prove the conspiracy it charged in the indictment rather than some other conspiracy.").  Although Bishop did eventually begin to exchange sex for prescriptions from Dekle, there was no evidence that the referral was for Dekle to give Bishop drugs; the only evidence was that Bishop sought money and Dekle paid her.   In short, although testimony indicates that Sheridan and Bishop knew about the illicit bargain the other had with Dekle, and that Dekle knew that both women were aware of his unlawful prescription writing, this does not give rise to the inference that Dekle conspired with either woman to distribute drugs.

Accordingly, for the foregoing reasons, Dekle's convictions for counts 2-129 are affirmed, and his conviction for one count of conspiracy to distribute drugs in violation of 21 U.S.C. § 846 is reversed.  We remand the case to the district court for resentencing in light of our disposition of the conspiracy count.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

8