[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15988

_____

D. C. Docket Nos. 06-00517-CV-3-RV-MD
02-00070-CR-3-R

GREGORY WADE HEMBREE,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 20, 2009)**

Before WILSON and COX, Circuit Judges, and FAWSETT,* District Judge.

_____

* Honorable Patricia C. Fawsett, United States District Court for the Middle District of Florida

PER CURIAM:

Gregory Wade Hembree is a federal prisoner who was convicted in 2003 on a two count indictment for conspiring to possess with intent to distribute cocaine and perjuring himself in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii), 21 U.S.C. § 846, and 18 U.S.C. § 1623. He appeals the district court's denial of (1) his counseled 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence and (2) an evidentiary hearing on the motion. For the reasons set forth below, we affirm.

## I. Facts

Hembree has alleged that his trial counsel, Drew Pinkerton, was ineffective, inter alia, for failing to (1) conduct an investigation by interviewing witnesses suggested by Hembree or reviewing documents provided by Hembree; (2) pursue a statute of limitations defense by arguing that Hembree's only contribution to the conspiracy occurred in 1996, outside the limitations period of 1997 to 2002, and instead pursuing a more difficult to prove withdrawal defense; and (3) object to the questions and argument of the government that Hembree's admission at trial that he purchased cocaine for personal use and to share with friends within the limitations period was evidence of a conspiracy to possess with intent to distribute cocaine rather than evidence of simple possession only.

2

Hembree asserted the following in his petition for habeas corpus.  Upon retaining Pinkerton, Hembree told his counsel that in the 1980's Hembree and Greg Lake were involved in trafficking cocaine.  Hembree related that this conspiracy ended when Greg Lake was arrested and imprisoned for his role in the scheme.  In the 1990's, after Greg Lake was released from prison, Lake harassed Hembree and claimed that Hembree "owed him" because Lake did not inform authorities of Hembree's involvement in the drug conspiracy.  Thus, in 1996 Hembree agreed to retrieve one last shipment of cocaine from Miami for Greg Lake.  This was the only work he did for Greg Lake after Lake's release from prison.  Thereafter, Hembree's wife, Kelli Hembree, became pregnant, and Hembree quit using cocaine for a period.  Hembree even went to the sheriff's office and offered to disclose his source of cocaine.  After a time Hembree began personally using cocaine again.  He and his friends would "pool" their money to buy cocaine for immediate use.  Greg Lake became suspicious that because Hembree would not deliver drugs for him, Hembree was working for the authorities.  One afternoon as Hembree left a mutual friend's home, a man and woman approached his car from the direction of Greg Lake's nearby home.  The man said to Hembree, "So you're Greg Hembree.  Well we just wanted to get a good look at you.  Be careful Hembree!" Later, the mutual friend told Hembree that the woman was a "hit man"

3

from Arizona or New Mexico and that he should "steer clear" of Greg Lake because Greg Lake was very angry with him. Another day after Greg Lake was again arrested for trafficking cocaine, Lake's wife, Nodie Lake, met with Hembree at a local restaurant and warned him that it would be "very dangerous" for him to testify against Greg Lake if subpoenaed. During their conversation, Greg Lake called Nodie Lake's cellular telephone, asked to speak with Hembree, and threatened Hembree by making reference to Greg Lake's "friend from out west." Ultimately Hembree was subpoenaed to testify at Greg Lake's trial. As he waited outside the courtroom, he saw the man who had accompanied the "hit man." This man approached Hembree and asked Hembree how he planned to testify. Hembree again felt threatened, and therefore he testified falsely at Lake's trial. Later, Hembree and Kelli Hembree were divorced, and Hembree was awarded custody of their children. In an effort to regain custody of her children, Kelli Hembree informed authorities that Hembree was trafficking cocaine with Greg Lake.

In his petition, Hembree first argued that Pinkerton failed to understand that the facts of Hembree's case supported a defense based on the statute of limitations. According to Hembree, the defense would have been viable because the conspiracy successfully concluded after Hembree and Lake traveled to Miami in June of 1996, over a year outside of the statute of limitations period. Due to this mistake

4

Hembree contends Pinkerton did not understand the importance of a question that the jury posed to the judge regarding the implication of the statute of limitations, Pinkerton failed to properly argue the case, and Pinkerton failed to insist on proper jury instructions regarding the statute of limitations defense. Hembree also argued that Pinkerton failed to object during Hembree's cross-examination to several of the goverment's questions which suggested that the pooling of money to buy cocaine for personal use constituted the possession of cocaine with intent to sell. Hembree contends that the government also made this argument in closing without objection.

The bulk of Hembree's petition concerned Pinkerton's alleged failure to conduct an adequate investigation. Hembree stated that he gave Pinkerton a list of potential witnesses who would testify in Hembree's favor. According to Hembree, Maxine Hembree, his mother, could corroborate Hembree's testimony that he was threatened by Greg Lake and testify that Hembree could not have made certain drug deliveries claimed by government witnesses. Ellis Woods, a friend of Hembree and the proprietor of the local restaurant where Hembree met Nodie Lake, could corroborate that Greg Lake called Nodie Lake on her cellular telephone and asked to speak with Hembree on the day in question and further that Hembree quit using cocaine when Kelli Hembree became pregnant. Ralph

Heulmann could corroborate that Hembree stopped using cocaine in the mid-1990's. Van Butler, III, could testify that Hembree contacted the sheriff's office and offered to disclose his cocaine sources, including Greg Lake. Van Butler, Jr., the father of Van Butler III, could confirm that Hembree contacted the sheriff's office. Tony Rudd could provide impeachment evidence concerning Kelli Hembree's cocaine dealing. Billy Johnson could testify that Kelli Hembree once told him that she "had something up her sleeve" to help regain custody of her children and that Kelli Hembree had a reputation for dishonesty. Kimberly Sturm could testify that Kelli Hembree had a significant drug problem. Mary Jean Gregg could testify that Kelli Hembree once told her that Kelli Hembree had a way to make Hembree "sorry" for taking their children and that Kelli Hembree had a reputation for dishonesty. Larry Suggs could testify that Greg Lake acted threateningly toward Hembree, that Hembree genuinely feared for his safety, and that Hembree's work schedule would not have permitted his participation in the drug deliveries described by the government's witnesses. Henry Houston, who also testified against Greg Lake regarding the 1980's trafficking scheme, could testify that he was threatened by Greg Lake and, therefore, that he also testified falsely at Lake's trial.[1]

---

[1] Hembree identifies three additional witnesses in his petition: Captain Greg Gandy, Steve Burden, and Michael Spencer. However, unlike the witnesses described above, Hembree did not

6

In addition, the government disclosed a list of its intended witnesses for trial. Hembree contended that Pinkerton failed to investigate the testimony of the witnesses on this list. According to Hembree, Nickolas Malamos could testify that he did not believe that Hembree was guilty and that Hembree obtained cocaine only for the personal use of himself and his friends.[2] Greg Lake planned to testify about three post-1996, within-limitations-period trips by Hembree to retrieve cocaine. Nodie Lake planned to testify about two post-1996, within-limitations-period trips by Hembree to retrieve cocaine. Hembree contends that Pinkerton would have been better prepared for trial had he known how the Lakes would testify.

Finally, Hembree asserted that he provided boxes of documents to Pinkerton that included telephone records, business records demonstrating Hembree's whereabouts during the alleged conspiracy, and money order receipts demonstrating that Kelli Hembree was the person spending money on drugs. Hembree contends that Pinkerton failed to examine these documents.[3]

---

allege in the petition that he asked Pinkerton to contact and investigate these witnesses. In any event, the testimony which Hembree alleges would have been provided by these witnesses covers the same issues as the proffered testimony described above.

[2] Malamos testified at trial that Hembree distributed cocaine to him after 1997.

[3] Hembree also made a number of arguments which are not raised on appeal: (1) that Pinkerton unreasonably advised Hembree to make a full proffer to the government without any agreement for immunity; (2) Pinkerton elicited testimony from Hembree about other, unrelated drug

The government responded to Hembree's petition by submitting the affidavit of Drew Pinkerton in which he explained that he had more than 20 years' experience practicing criminal trial law. Pinkerton stated that he conducted the investigation he felt was necessary in Hembree's case. As to witnesses, he did not think that all of the potential witnesses suggested by Hembree had material information that would have substantially furthered Hembree's defense. Specifically, he did not think that Maxine Hembree could effectively bolster Hembree's credibility, because she was his mother. He thought that Kelli Hembree's testimony was rebutted effectively on his cross-examination which made the flaws in her credibility obvious. He thought that testimony from Ellis Woods, Ralph "Hughman,"[4] Van Butler, III, Tony Rudd, Henry Houston, and others [5] would not have been helpful to Hembree's defense, because these potential witnesses were involved in the drug trade, lacked credibility, their testimony would have been cumulative only, and/or their testimony would have reiterated to the jury

crimes that Hembree committed outside the limitations period; (3) Pinkerton failed to move in limine to exclude evidence that showed Hembree had undergone psychological treatment for being dishonest; (4) Pinkerton failed to move to sever the conspiracy and perjury counts; (5) Pinkerton failed to offer a defense for the perjury charge; (6) Pinkerton failed to move for a mistrial due to the government's violation of a district court order; and (7) sentencing counsel failed to object to the district court's findings of fact and apparent belief that the sentencing guidelines were mandatory.

[4] The name of this witness appears elsewhere in the record as Ralph Heulmann.

[5] Pinkerton's affidavit does not specifically address Hembree's allegations concerning the potential testimony of several witnesses, including Van Butler, Jr.

8

that Hembree was involved with drug dealers and drug users. He believed it was "naive" to think that any of these witnesses, including Greg Lake and Nodie Lake, would have volunteered to him prior to trial exactly how they planned to testify.[6] As to documents, Pinkerton requested the boxes of documents mentioned by Hembree and stated that he reviewed these documents but found them "incomplete at best" and inadequate to establish a usable time line of Hembree's activity within the conspiracy.

Pinkerton also stated that he made the tactical decision to pursue a withdrawal defense. Before doing so, he identified three possible defenses, namely that Hembree's claimed sole contribution to the conspiracy was outside the limitations period, that Hembree withdrew from the conspiracy, and that the government could not establish guilt beyond a reasonable doubt because its witnesses lacked credibility and there was no physical evidence of Hembree's involvement in any crime charged. Based on the information available to him at the time, Pinkerton felt that the withdrawal argument was the best strategy to pursue. In retrospect, he stated that an argument that the government had not proven guilt beyond a reasonable doubt would have been best.[7]

---

[6] In addition, Pinkerton believed that the Lakes were seeking a reduction in sentence by providing testimony favorable to the government.

[7] The trial record reflects that Pinkerton did in fact argue that the government did not meet its burden to prove Hembree's guilt beyond a reasonable doubt.

Furthermore, Pinkerton stated that he did not object to the government's argument equating Hembree's possession and sharing of cocaine with a conspiracy to distribute cocaine because he did not think, based on Hembree's testimony and what Hembree had told him, that this Court's published cases on the matter, United States v. Dekle, 165 F.3d 826 (11th Cir. 1999), and United States v. Hardy, 895 F.2d 1331 (11th Cir.1990), were applicable.

The magistrate judge declined to hold an evidentiary hearing and entered a report and recommendation that Hembree's § 2255 motion should be denied. The magistrate reasoned that Hembree had not demonstrated that Pinkerton's conduct was deficient, as Pinkerton's decision not to interview witnesses, choice of defense, and decision not to object to the government's questions and closing argument were reasonable. Over Hembree's objections, the district court adopted and affirmed the magistrate's report and recommendation.

Hembree filed a motion for certificate of appealability ("COA") naming seven possible issues and a notice of appeal. (R1-131, 132). The district court granted a COA on:

> (2) Whether defendant's trial counsel was constitutionally ineffective because he failed to conduct adequate investigation;
> (3) Whether counsel's failure to pursue a pure statute of limitations defense was unreasonable and hence constitutionally ineffective;
> (4) Whether testimony regarding Greg Lake's threats to defendant Hembree would have lent support to defendant's coercion/duress

10

defense to the perjury charges in this case, and whether counsel was constitutionally ineffective for failing to present such testimony;

(5) Whether there was a basis in the record for trial counsel to argue that defendant's admitted purchases of cocaine during the limitations period constituted simple possession, and whether counsel's failure to do so was constitutionally ineffective; [and]

(6) Whether certain portions of the Eleventh Circuit's rulings were dispositive of defendant's § 2255 claims of ineffective assistance of counsel, when defendant presented additional evidence that was not in the record on direct appeal.

Hembree moved this Court to expand the COA to include whether the district court erred in resolving disputes of fact without first conducting an evidentiary hearing. This Court denied the motion as unnecessary, explaining that Hembree could discuss the district court's denial of an evidentiary hearing in the context of each substantive claim covered by the COA.

## II. Law & Analysis

### A. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim is a mixed question of law and fact. We review the district court's findings of fact for clear error and its decision on the ultimate issue de novo. Conklin v. Schofield, 366 F.3d 1191, 1201 (11th Cir. 2004). The right to counsel is the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The benchmark for judging a claim of ineffective assistance of counsel is whether counsel's performance so undermined the proper functioning

11

of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. at 686, 104 S. Ct. at 2064. To make such showing, a petitioner must prove that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Id. at 687, 104 S. Ct. at 2064. The Supreme Court has held that the reviewing court need not address both components of the inquiry, however, if the petitioner makes an insufficient showing on one. Id. at 697, 104 S. Ct. at 2069.

Regarding the deficient performance component, the Supreme Court stated that the proper measure of attorney performance is reasonableness under prevailing professional norms. Id. at 688, 104 S. Ct. at 2065. We further have explained that counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). The Supreme Court has held that counsel's performance deserves substantial deference and that there is a strong presumption that counsel's performance fell within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. The Supreme Court likewise has held that the reviewing court should make every effort to eliminate the distorting effects of hindsight and evaluate the conduct from counsel's perspective at the time. Id.

Regarding the prejudice component, the Supreme Court has stated that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. The Supreme Court also has explained that a reasonable probability is one sufficient to undermine confidence in the outcome. Id. We have recognized that given these principles and presumptions, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313.

### 1. Investigation

The Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. In Fortenberry v. Haley, 297 F.3d 1213, 1227-28 (11th Cir. 2002), we considered the duty to investigate with regard to a defendant's argument that his counsel was ineffective for failing to uncover certain testimony to present to the jury. We held that the defendant's argument was insufficient to undermine confidence in the defendant's conviction since (1) the defendant had not shown that certain of the named witnesses would have given helpful information if interviewed, especially as one of these witnesses did not reveal to anyone her helpful information until many years

13

after the defendant's conviction; (2) certain of the named witnesses' testimony was "simply too insubstantial to create any doubt in [the defendant's] conviction"; and (3) certain of the witnesses were unreliable. Id.

Likewise, Hembree has not shown that Pinkerton's described conduct was prejudicial. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. The evidence does not establish that Hembree would not have been convicted had Pinkerton interviewed, or even called to testify, the named witnesses or reviewed the documents in question. See id.; Fortenberry, 297 F.3d at 1227-28. Also, the jury heard testimony at trial similar to that proffered and nonetheless convicted Hembree. As a result, it is unlikely that calling the named witnesses to testify would have altered the outcome of the trial. See Fortenberry, 297 F.3d at 1228 ("[A]lthough Yates would have testified that he had heard Guest make a statement suggesting that no robbery had taken place, there was conclusive evidence produced at trial that a robbery had occurred; thus, the absence of Yates' testimony is unlikely to have produced a different outcome.").

Specifically, Hembree proffered that the named witnesses (1) would have stated that Hembree stopped using cocaine, offered the sheriff's department information on his sources of cocaine, and could not have traveled to south Florida to retrieve cocaine at the times in question; (2) would have impeached Kelli

14

Hembree; and (3) would have corroborated Hembree's story that Greg Lake and Nodie Lake threatened him and thereby coerced him to commit perjury. However, the record demonstrates that Pinkerton elicited this same testimony at trial. For instance, at trial Hembree testified that he stopped "partying," attempted to give the police information on his sources, and that Greg Lake and Nodie Lake threatened him. Also, Nodie Lake testified that she told Hembree there might be "consequences" for his testimony. Furthermore, Kelli Hembree testified at length on her drug usage. Likewise, Pinkerton thoroughly cross-examined Kelli Hembree on her testimony regarding when Hembree traveled to Miami to retrieve cocaine, ultimately forcing her to correct and contradict herself, and on the fact that her children had been taken from her by the state because of her drug usage. Thus, the jury was exposed to the same information that Hembree claims the witnesses he suggested would have given. We do not believe that the cumulative evidence Hembree wished to introduce would have changed the jury's verdict. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Fortenberry, 297 F.3d at 1228. Further, Hembree has not asserted how Pinkerton's alleged failure to investigate the box of documents may have influenced the trial, and therefore we cannot conclude that this alleged error was prejudicial.[8] See id.

_____

[8] Moreover, Pinkerton called Michael Moon, a special agent with the Drug Enforcement Agency, to testify in Hembree's favor. Moon stated that the agents found no physical evidence

15

## 2. Choice of Defense

Hembree next contends that Pinkerton provided ineffective assistance of counsel by choosing a defense based on Hembree's withdrawal from the conspiracy in lieu of a defense based on the statute of limitations.

The statute of limitations for a conspiracy charged pursuant to § 846 is five years. 18 U.S.C. § 3282(a). The requirements of the statute of limitations are satisfied if the government proves that the conspiracy continued into the limitations period. United States v. Arnold, 117 F.3d 1308, 1313 (11th Cir. 1997). A conspiracy is presumed to continue so long as its objective has neither been abandoned nor accomplished. United States v. Coia, 719 F.2d 1120, 1124-25 (11th Cir. 1983). A conspirator is presumed to have continued participating in the conspiracy for its duration. See United States v. Finestone, 816 F.2d 583, 589 (11th Cir. 1987). The conspirator can overcome this presumption by establishing that he withdrew from the conspiracy. Id. To do so, he must show that (1) he undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives and (2) either communicated those acts in a manner reasonably calculated to reach his co-conspirators or

---

linking Hembree to Greg Lake after the execution of a search warrant in Greg Lake's residence. Thus, the jury was made aware of the fact that the government lacked physical evidence of Hembree's involvement in the conspiracy.

disclosed the illegal scheme to law enforcement authorities.[9] Id.

Hembree has not shown that Pinkerton's described conduct was prejudicial. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. The evidence does not establish that Hembree would not have been convicted had Pinkerton focused more on arguing that Hembree's only contribution to the conspiracy occurred before 1997. See id. First, the evidence suggests that the jury was made well aware that the statute of limitations was a concern and that Hembree believed his contribution to the conspiracy last occurred in 1996 and not thereafter. Further discussion of this point would not have altered the jury's conclusion. Specifically, the record demonstrates that Pinkerton related in his opening statement that Hembree could not be convicted because the government failed to "[bring] a prosecution within the statute of limitations." The district court also instructed the jury that it must find that the conspiracy extended into the limitations period. Hembree further testified that he retrieved cocaine from Miami and helped to cut and package the cocaine for Greg Lake in 1996 but never assisted Greg Lake or anyone else involved in the conspiracy again after that.

Also, there was substantial evidence presented to the jury establishing that

---

[9] "Withdrawal . . . is an affirmative defense, which the defendant has the burden of proving." Finestone, 816 F.2d at 590. Thus, the government had to show that the conspiracy itself did not stop before July 17, 1997, and Hembree had to show that he personally withdrew from the conspiracy before July 17, 1997.

17

Hembree participated in the conspiracy beyond 1996, so that the jury would have reason to convict Hembree even if Pinkerton pursued this defense more aggressively. See id. The record demonstrates that several witnesses testified that Hembree was involved in trafficking cocaine after July of 1997 and therefore that he participated in the crime within the limitations period. Specifically, Nodie Lake testified that she and Hembree traveled to Miami to retrieve cocaine in July of 1997 and in September of 1997 and that she knew that both of these trips occurred after Hembree's daughter was born in July of 1997 because she recalled Hembree bathing his daughter in the sink when they returned from the first trip. Greg Lake likewise testified that Hembree traveled to Miami to retrieve cocaine in July of 1997 and in September of 1997. Dr. Nicholas Malamos also testified that he purchased cocaine from Hembree in 1998 and 1999 and that he remembered Hembree's daughter being present when Hembree delivered cocaine to him on certain occasions. In fact, Malamos stated that Hembree continued to deliver cocaine even after Hembree's daughter was old enough to walk. Kelli Hembree further testified that Hembree assisted Greg Lake in the trafficking scheme in question after 1997 and that she remembered traveling with Hembree to retrieve cocaine after the birth of their daughter.

Hembree also contends that Pinkerton erred by not insisting that the trial

18

court answer a question posed by the jury in a manner different than chosen by the district court judge. Specifically, the jury asked: "If the defendant never withdrew from the conspiracy, does the statute of limitations date apply?" Hembree states that Pinkerton should have insisted that the district court answer this question, "yes." Instead, Pinkerton consented to the court's decision to refer the jury back to the jury instructions. On direct appeal, we approved the district court's handling of this question and the jury instructions. Thus, Pinkerton could not have provided ineffective assistance of counsel by consenting to the district court's reliance on legally correct jury instructions. Further, the question asked by the jury is sufficiently ambiguous such that a simple "yes" answer, as Hembree urges, or a "no" answer, as the government initially requested, would not have provided the jury with appropriate guidance.

### 3. Government's Use of Hembree's Testimony

Hembree finally argues that Pinkerton should have objected to questions that the government asked on cross-examination which suggested that the pooling of money to purchase cocaine for personal use can constitute possession with intent to distribute. Hembree also argues that Pinkerton should have objected to a similar line of argument during the government's closing.

To establish a violation of 18 U.S.C. § 846, the government must prove that

19

two or more persons agreed to violate the narcotics laws and that the defendant was a knowing participant in the agreement. United States v. Pintado, 715 F.2d 1501, 1503 (11th Cir.1983). In Hardy, the government charged the defendant with violating this provision because the defendant personally used cocaine, hosted parties attended by drug users and suppliers, helped a friend purchase cocaine for the defendant and the friend's joint personal use, and gave another friend a small amount of cocaine on one occasion. 895 F.2d at 1334. We held that the facts that the defendant possessed and shared a small amount of cocaine did not support an inference that the defendant entered into a prior agreement with certain unnamed persons to distribute cocaine. Id. Likewise, in Dekle, we held that evidence of a buyer-seller relationship, even when the buyer repeatedly purchased cocaine from the seller and sometimes shared the cocaine with friends, was insufficient to establish that the buyer and seller had a joint criminal objective to distribute cocaine to third parties. 165 F.3d at 829-30.

Hembree, however, reads Hardy and Dekle as forbidding the government from arguing that personal use of cocaine can support the existence of an ongoing conspiracy to distribute cocaine. He contends that Pinkerton rendered ineffective assistance of counsel by failing to object to this line of argument. We disagree and conclude that Hembree has failed to show that Pinkerton's described conduct was

20

deficient.[10]  See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

As an initial matter, we disagree with the factual premise of Hembree's argument.  The record does not support Hembree's contention that the government suggested Hembree's admitted conduct of buying cocaine to use personally and to share with friends was alone sufficient to establish his guilt for the crime charged.  Specifically, Hembree testified that he, Kelli Hembree, and five or six friends would "pool" their money, purchase "eightballs" of cocaine from Greg Lake and Nodie Lake, "dump [the cocaine] on a plate," and snort the cocaine.  Hembree also stated that he would occasionally pick up an extra eightball for one of his friends to take home.  On these points, Hembree and the government's counsel engaged in the following line of questions and answers:

> A      I would – I would purchase more than one [eightball] for my friends, and I – if it's – if that's selling [cocaine], then that's what I was doing.
> Q      Well, has – has your attorney shared with you the definition of distribution for federal law enforcement purposes and what the jury will hear down the road?
> A      Yes, sir.
> Q      The transfer of possession from one person to another –
> A      Yes, sir.

_____

[10]  The government argues that this matter is beyond the scope of the COA.  It appears, however, that the question certified, whether Pinkerton should have argued that Hembree's conduct supported a simple-possession conviction only, is broad enough to encompass Hembree's argument on appeal that Pinkerton was ineffective for failing to object to the government's characterization of his testimony.  Further, Hembree's argument on appeal, rather than the argument described in the COA, is the argument that Hembree presented to the magistrate and district court.

Q       – with or without any financial [remuneration]?
A       Yes, sir.  That's correct.
Q       So you were transferring cocaine from one person to another?
A       Yes, sir.
Q       You don't deny that?
A       No, sir.
Q       But the key denial is that it didn't happen after July 17th of 1997, right?
A       Absolutely.
Q       Because if you can convince the jury of that, you walk out those doors a free man?

The government stopped short of suggesting that Hembree's post-1997 purchase of cocaine for personal use and to share with friends was an admission of guilt to his involvement in a conspiracy to possess and distribute cocaine.  The government also argued in its closing that Hembree's testimony supported his guilt.  However, the government explicitly argued that Hembree's testimony was inculpatory because he admitted to involvement in a trafficking scheme before 1997 and to obtaining cocaine to give to friends after 1997.  Therefore, the government did not argue that giving cocaine to his friends alone was sufficient to establish Hembree's guilt, but rather that Hembree's testimony established his continued participation in the conspiracy within the limitations period.

We also disagree with Hembree's argument that Hardy and Dekle preclude the government from arguing that personal use of cocaine can support the existence of an ongoing conspiracy to distribute cocaine.  Our case law does not bar the

22

government's argument regarding Hembree's testimony, and therefore Pinkerton did not have a clear reason to object. In Hardy and Dekle, we held that evidence of a buyer/seller relationship did not support an inference that the defendant entered into a prior agreement with certain unnamed persons to distribute cocaine. Hardy, 895 F.3d at 1334; Dekle, 165 F.3d at 829-30. We did not hold that a buyer/seller relationship cannot be characterized as continued activity within an already existent conspiracy. See id. In the instant case, unlike in Hardy and Dekle, the government did not argue that Hembree's testimony, alone, was sufficient to infer that Greg Lake and Hembree had made an agreement to distribute cocaine. Rather, the government argued that Hembree had admitted to his involvement in the conspiracy with Greg Lake and others by testifying that he traveled to Miami to retrieve cocaine in 1996. The government argued that the jury should use Hembree's testimony concerning his continued acquisition of cocaine from the Lakes and his use of cocaine with his friends to conclude that Hembree still was involved in this already existent conspiracy after 1997.[11] Therefore, because the

_____

[11] On direct appeal, we explained:

Not only did [Hembree] sell cocaine for his supplier, Greg Lake, he also sold cocaine to Dr. Malamos, who in turn gave Hembree prescriptions for pain medications. Furthermore, Hembree and his coconspirators entered the narcotic[s] business in part to fund their addictions to cocaine and prescription pain medications. Hembree's ongoing drug use and his interaction with his coconspirators while consuming drugs was a vital part of the conspiracy.

23

government did not make the argument rejected by this Court in <u>Hardy</u> and <u>Dekle</u>, it did not mistate the law in manner that a reasonable attorney would have a basis to object. [12]

Because the evidence does not demonstrate that Pinkerton's conduct was deficient or prejudicial in the manner claimed, Hembree did not establish that he received constitutionally ineffective assistance of counsel. <u>See</u> <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064. Accordingly, we affirm the district court's decision finding no ineffective assistance of counsel as to this matter.

## B. Evidentiary Hearing

We review a district court's denial of an evidentiary hearing on a § 2255 motion for abuse of discretion. <u>Aron v. United States</u>, 291 F.3d 708, 714 n.5 (11th Cir. 2002). Pursuant to 28 U.S.C. § 2255(b),

> [u]nless the [§ 2255] motion [in question] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

We have interpreted this law and held that "if the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary

---

*United States v. Hembree*, No. 03-16001, *slip op.* at 19 (11th Cir. Dec. 8, 2004).

[12] In fact, Pinkerton stated in his affidavit that Hembree's own testimony "involved the purchase of multiple 'eightballs' of cocaine that were not personally being consumed." Thus, Pinkerton did not feel that he could make a good faith objection to the government's argument.

24

hearing and rule on the merits of his claim." Aron, 291 F.3d at 714-15.

The district court did not abuse its discretion in declining to hold an evidentiary hearing. See id. at 714 n.5. The facts that Hembree alleges are in dispute deal with the extent of Pinkerton's investigation, with Hembree claiming that Pinkerton conducted no investigation and Pinkerton asserting that he considered the proposed witnesses, examined the documents provided by Hembree, and determined that none of this evidence would assist Hembree's defense. Even if we presume that each proposed witness would have testified in the manner proposed, however, Hembree remains unentitled to relief. See id. at 714-15.

For instance, if Maxine Hembree were competent to testify at an evidentiary hearing that Greg Lake threatened Hembree or that Hembree could not have traveled to Miami on the dates in question, Hembree would nonetheless be unable to satisfy the prejudice prong of the Strickland test. The record demonstrates that Hembree testified both to the threat and that he did not travel to Miami or participate in the conspiracy after 1996. In contrast, Greg Lake testified that he did not threaten Hembree, and several witnesses testified that Hembree did travel to Miami to retrieve cocaine on several occasions in and after July of 1997. The jury was entitled to believe this testimony. Also, if Ellis Woods testified that Greg

25

Lake indeed called Nodie Lake's cellular telephone and asked to speak with Hembree on the day in question, Hembree nonetheless would not be entitled to relief. Hembree has not alleged that Ellis Woods could testify to what was said on Nodie Lake's cellular telephone that day. Likewise, if Ralph Heulmann were competent to testify that Hembree quit using cocaine when Kelli Hembree became pregnant, Hembree nonetheless would not be entitled to relief. Hembree himself provided the same testimony. It was contradicted by the testimony of other witnesses, and the jury was entitled to believe them. Furthermore, if Van Butler, III, testified that Hembree offered authorities information on his sources of drugs, Hembree nonetheless would not be entitled to relief. Hembree himself testified to this fact. Finally, if Billy Johnson testified that Kelli Hembree once said that she "had something up her sleeve" to regain custody of her children, Hembree nonetheless would not be entitled to relief, as this statement only would serve to impeach Kelli Hembree, which Pinkerton did on her cross-examination during the trial. The remaining testimony proposed by Hembree is similar to that described above and did not warrant an evidentiary hearing.

Because Hembree has not established that an evidentiary hearing would alter the analysis of his § 2255 motion, the district court did not abuse its discretion in denying such relief. See Aron, 291 F.3d at 714 n.5. Accordingly, we affirm as to

26

this matter.[13]

### III. Conclusion

No error having be found, the decision of the district court is

**AFFIRMED.**

---

[13] Any issue asserted by Hembree which is not specifically addressed in this opinion is found to be without merit.