[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11002

_____

D.C. Docket No. 1:11-cr-00151-CG-C-3


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHNNY BLAKE CLANTON,
LOVERNE BOLLWAGE BLACKLEDGE,

Defendants - Appellants.


_____

Appeals from the United States District Court
for the Southern District of Alabama
_____

(April 4, 2013)

Before WILSON and COX, Circuit Judges, and BOWEN,[*] District Judge.

WILSON, Circuit Judge:

Appellant Johnny Blake Clanton appeals his conviction for possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). On appeal, he challenges the jury instruction given by the court to define "unlawful user" under the statute. Appellant Loverne Bollwage Blackledge appeals her conviction and sentence for conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and two counts of knowingly and intentionally using a communication facility to facilitate the distribution of marijuana, in violation of 21 U.S.C. § 843. Blackledge contends that the district court erred in: (1) denying her motion to suppress; (2) denying her motion for a judgment of acquittal; (3) refusing to give the proposed "buyer-seller" jury instruction; (4) improperly counting the conduct of the entire conspiracy as relevant conduct attributable to her; and (5) only giving her a minor role reduction when a minimal role reduction was appropriate.

After both oral argument and a thorough review of the record, we conclude that the district court's charge to the jury with regard to Clanton was a correct statement of the law, and thus we affirm the district court with regard to Clanton's appeal. We also conclude, however, that the district court erred in denying

---

[*] Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

Blackledge's motion for a judgment of acquittal, and therefore we reverse her conviction on sufficiency of the evidence grounds.  Accordingly, we need not address her other arguments, as they are rendered moot.

## I.

Clanton, Blackledge, and eight other defendants were charged in a multi-count indictment in connection with a marijuana distribution conspiracy.  The evidence adduced at trial and relevant to this appeal revealed that during the fall of 2010, the Federal Bureau of Investigation (FBI) began investigating a suspected marijuana distribution ring located at Affordable Auto Repair, which was owned and operated by co-defendant James Kenneth Spencer.  FBI agents, in collaboration with local law enforcement, established wiretap, pole camera, and live surveillance of Spencer and the repair shop, and observed meetings and intercepted phone calls between Spencer and numerous other individuals, including appellants Clanton and Blackledge.

During the investigation, FBI agents observed Blackledge at the repair shop on eight different occasions between mid-February and May 1, 2011.  Spencer testified at trial that he began supplying Blackledge with an average of "an ounce a week," beginning in January 2011, and testified that the amount of marijuana that Blackledge purchased steadily increased to two to three ounces per visit, packaged separately into one-half to one-ounce amounts.  Theresa Spencer, Spencer's wife,

3

and Crystle Enochs, Spencer's daughter, respectively testified that Blackledge began purchasing marijuana as early as "mid-summer" 2010, or sometime "after the fall of 2010.

On April 22, 2011, local law enforcement and FBI agents posing as local officers performed a traffic stop of Blackledge's vehicle after she left the repair shop. During the stop, Blackledge consented to a search of her vehicle which revealed three individually wrapped packets of marijuana in the amounts of 28.17 grams, 28.41 grams, and 14.13 grams. In exchange for not arresting Blackledge for drug possession, officers requested that she contact them with any information about drug activity in the area.

On May 6, 2011, FBI agents and local police executed search and arrest warrants on multiple members of the conspiracy. Law enforcement conducted a search of Clanton's home, during which they found marijuana residue, a roach clip, burnt marijuana cigarettes, rolling papers, a small amount of marijuana, a marijuana grinder, a bong, four guns, and over $1,800 in cash. On May 12, an FBI agent collected a urine sample from Clanton, the analysis of which showed metabolites of the active ingredient in marijuana. A forensic toxicologist testified that marijuana metabolites can remain in a person's system for as long as 60 days, and thus he could not determine exactly when Clanton had last used the drug. However, he clarified that for most people, the drug would generally stay in an

4

individual's system between one day and one week.  Chronic users would test positive for longer periods of time.  Other witnesses testified that Clanton often smoked marijuana with Spencer at the repair shop, and wiretap recordings confirmed that Clanton and Spencer had discussed doing so as recently as April 22, 2011.

Blackledge was also arrested on May 6, 2011, along with other members of the conspiracy.  At trial, Theresa Spencer testified that while the two of them were in jail, Blackledge stated that she was upset because her long-time friends and landlords—Clifton McCready, Lynn McCready, friends named "Jimmy" and "Tiffany," and another individual—refused to answer her phone calls, especially because they had "used [Blackledge] to get their stuff."  Theresa Spencer further testified that Blackledge was "getting [marijuana] for the whole crowd" because Jimmy was "being watched," and that Blackledge and her friends "would go in on whatever they could afford."  James Spencer testified that he did not "front" Blackledge any drugs, and that "she never kicked back any money."

At the close of the government's case, Blackledge moved for a judgment of acquittal, and renewed her motion at the close of the evidence; the district court denied both motions.  Before deliberations, Clanton requested that the court give the following two jury instructions for the § 922(g)(3) offense, modeled after the Sixth Circuit Pattern Criminal Jury Instruction provided in § 12.01:

5

922(g)(3) criminalizes the possession of a firearm by a person "who is an unlawful user of or addicted to any controlled substance." To sustain a conviction, the government must prove beyond a reasonable doubt that the defendant's drug use was consistent, prolonged, and close in time to his gun possession. The drug must be proven to have been sufficient to impair the user's judgment.

The term "unlawful user of or addicted to any controlled substance" contemplates the regular and repeated use of a controlled substance in a manner other than as prescribed by a licensed physician. Intermittent or infrequent use of a controlled substance is not sufficient to establish the defendant as an "unlawful user or addict." Rather, the defendant must have been engaged in use that was sufficiently consistent and prolonged as to constitute a pattern of regular and repeated use of a controlled substance sufficient to impair his judgment. The government must establish beyond a reasonable doubt that the use of the controlled substance was on-going and contemporaneous with the possession of the firearm.

The district court rejected Clanton's proposed instructions and instead gave the Eighth Circuit Pattern Criminal Jury Instruction, provided in § 6.18.922B:

The term "unlawful user" of a controlled substance means a person who was actively engaged in the use of a controlled substance during the time he possessed the firearm, but the law does not require that he used the controlled substance at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.

The jury convicted Clanton of the firearm count, and the district court sentenced him to 21 months' imprisonment. Likewise, the jury found Blackledge guilty on all counts, and the district court sentenced her to 27 months' imprisonment. Clanton and Blackledge timely appealed.

II.

We review a challenge to a given jury instruction de novo. *United States v. Chandler*, 996 F.2d 1073, 1085 (11th Cir. 1993). A trial court has broad discretion to formulate jury instructions, as long as they are a correct statement of the law. *United States v. Merrill*, 513 F.3d 1293, 1305 (11th Cir. 2008). We review a claim that the district court omitted an instruction for an abuse of discretion. *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994). A district court's refusal to deliver an instruction is reversible error if the instruction: "(1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point in the trial so vital that the failure to give the requested instruction seriously impaired the defendant's ability to defend." *United States v. Lively*, 803 F.2d 1124, 1125–26 (11th Cir. 1986) (alteration and internal quotation marks omitted). Jury instructions are also subject to harmless error review. *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012), *cert. denied*, __ S. Ct. __ (U.S. Mar. 25, 2013) (No. 12-641).

Section 922(g)(3) makes it unlawful for a person "who is an unlawful user of . . . any controlled substance" to possess a firearm. The term "unlawful user" is not defined in the statute, *see* 18 U.S.C. § 921, and this court has not yet adopted pattern instructions for § 922(g)(3) offenses. We have, however, considered the definition of "unlawful user" in the context of the Sentencing Guidelines. *See*

7

*United States v. Edmonds*, 348 F.3d 950, 953 (11th Cir. 2003) (per curiam).[1]  To

be an unlawful user of marijuana, "a defendant's use must be ongoing and

contemporaneous with the commission of the offense."  *Id.* (quoting *United States*

*v. Bernardine*, 73 F.3d 1078, 1082 (11th Cir. 1996)).  However, we clarified that

the government is not required to show that the use was simultaneous with the

firearm possession or that the defendant was under the influence at the time of the

possession.  *Id.*

Here, we conclude that the given jury instruction was erroneous.  As a

preliminary matter, we agree that the district court properly stated that an unlawful

user must be "actively engaged in the use of a controlled substance during the time

he possessed the firearm, but [that] the law does not require that he used the

controlled substance at the precise time he possessed the firearm."  This clause

satisfied the "ongoing and contemporaneous use" standard, as well as the temporal

nexus requirement connecting the drug use and firearm possession.  *See id.* ("[T]he

government must show the defendant was an 'unlawful user' of a controlled

substance *during the same time period* as the firearm possession." (emphasis

added)).  However, the district court's subsequent statement—that "[s]uch use is

---

[1] In *Edmonds*, this court interpreted § 2K2.1 of the Guidelines, which provides for a specific base offense level if the defendant possessed a firearm while classified as a "prohibited person."  U.S.S.G. § 2K2.1(a)(4)(B) and (a)(6).  The Guideline commentary instructs that the term "prohibited person" is defined in 18 U.S.C. § 922(g), which in turn includes an "unlawful user" of a controlled substance.  *Id.* § 2K2.1, cmt. n.3.

not limited to the use of drugs on a particular day or within a matter of days or weeks before"—was improper because it directly undercut the temporal nexus requirement.

Nevertheless, although the district court's instruction was erroneous, that error was harmless. The government presented sufficient evidence that Clanton had used marijuana contemporaneously with his firearm possession, particularly in light of the fact that Clanton's urine sample—obtained six days after the search of his home where officers found firearms—contained the primary metabolite found in urine after marijuana use. Accordingly, we affirm Clanton's conviction.

III.

We now turn to the issues raised by Blackledge. When an appellant challenges the denial of her Rule 29 Motion for Judgment of Acquittal, we review de novo whether the record contains sufficient evidence to support the jury's verdict. *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1217 (11th Cir. 2010). "When conducting the review of the record, we view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." *United States v. To*, 144 F.3d 737, 743 (11th Cir. 1998) (internal quotation marks omitted). "The jury is free to draw between reasonable interpretations of the evidence presented at trial," *United States v. Bacon*, 598 F.3d 772, 775 (11th Cir. 2010) (per curiam), and "[w]e must

uphold the jury's verdict whenever a reasonable factfinder could conclude that the evidence establishes guilt beyond a reasonable doubt." *To*, 144 F.3d at 743–44.

Blackledge argues that the government's evidence failed to establish that she was involved in the alleged conspiracy to distribute marijuana for profit; instead, she contends that she was simply engaged in a "buyer-seller" relationship with Spencer, and that the government cannot meet its essential burden of proving that she shared a similar goal to distribute narcotics for profit. The government argues that there was more than sufficient evidence presented at trial to establish beyond a reasonable doubt that Blackledge was an active distributor in the conspiracy, based on evidence from wiretaps, live surveillance, pole cameras, search warrants, and cooperating co-conspirators, as well as Blackledge's own incriminating statements to Theresa Spencer.

Even viewing the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility evaluations in favor of the jury's verdict, a de novo review of the record shows that the government did not present sufficient evidence at trial for the jury to conclude that Blackledge entered into any agreement with the joint objective of distributing drugs. The government did not present evidence beyond "the mere agreement of one person to buy what another [person] agree[d] to sell." *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999) (internal quotation marks omitted). None of the principals in the conspiracy

ever testified as to any agreement with Blackledge, despite explicitly testifying about their drug distribution agreements with each other.

Even Theresa Spencer's limited testimony—on which the government heavily relies—simply stated that Blackledge was upset because the McCready's "used [her] to get their stuff."  This testimony falls squarely within our holdings in *Dekle* and *United States v. Hardy*, 895 F.2d 1331, 1334 (11th Cir. 1990), that merely "help[ing] another purchase [a small amount of drugs] for their joint personal use" is insufficient to support a conspiracy conviction.  *Dekle*, 165 F.3d at 830 (quoting *Hardy*, 895 F.2d at 1334) (alterations omitted).  Moreover, we have rejected the contention that "repeated [exchanges] turn[] a buy-sell agreement into a conspiracy."  *Id.*

Although "[t]he existence of an agreement may be proven by circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme," *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (internal quotation marks omitted), we reiterated in *Dekle* that the application of that premise applied only in cases that "involved typical drug transactions intended for resale and the generation of proceeds."  165 F.3d at 830.  Contrary to other cases where we have sustained such an inference, there is no evidence that Blackledge received any profits from her repeated marijuana purchases or that she possessed any items associated with drug distribution, such as

11

drug packing paraphernalia or large quantities of money.  Moreover, the minimal amount of marijuana purchased—one to three ounces per week, for joint personal use between five people—does not support an inference of distribution or possession with intent to distribute.  *See United States v. Brown*, 872 F.2d 385, 390–91 (11th Cir. 1989); *see also Hardy*, 895 F.2d at 1334–35.

Accordingly, we find no merit in the issues raised by Clanton, and therefore affirm his conviction.  As to Blackledge, we vacate her convictions and remand to the district court for entry of a judgment of acquittal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**